# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TIMOTHY SEWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 2:23-cv-00317 |
| THE LINCOLN NATIONAL LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR EXTENSION OF DEADLINE TO FILE CROSS-MOTIONS FOR JUDGMENT

Defendant The Lincoln National Life Insurance Company ("Lincoln") files its Reply in Support of Its Motion for Extension of Deadline to File Cross-Motions for Judgment and shows the Court as follows:

## I.
## BACKGROUND FACTS AND PROCEDURAL HISTORY

This case arises under the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. §§ 1001 et. seq. Plaintiff Timothy Sewell submitted a claim for Accidental Death and Dismemberment ("AD&D") benefits from the McLarens, LLC Group Life Insurance Plan (the "Plan"). Lincoln was the claim administrator for the Plan under a Group Life Insurance Policy (the "Policy") that Lincoln had issued to McLarens, LLC to insure benefits from the Plan.

The claim was initiated when either Sewell's employer or a representative of Sewell sent Lincoln information on October 21, 2022, regarding a potential claim by Sewell for AD&D benefits under the Policy pertaining to the injuries Sewell suffered in the incident on August 28, 2021, (AR

667[1]).  This was Lincoln's first notice that Sewell may be seeking AD&D benefits from the Policy. Lincoln then requested additional information from the employer regarding Sewell's benefit elections and also requested that Sewell's representative provide a completed claim form, which Sewell's representative e-mailed to Lincoln on November 17, 2022 (AR at 649).  Lincoln then requested additional information, including a toxicology report (AR 646).  Based on the toxicology report that reflected Sewell had a .222% blood alcohol level at the hospital after the incident, Lincoln denied Sewell's claim for benefits on January 27, 2023, under the Policy exclusion that benefits are not payable if the loss was contributed to or caused by "the presence of alcohol in the Covered Person's blood which raises a presumption that the Covered Person was under the influence of alcohol and contributed to the cause of the accident." (AR at 638-640; Policy at 33).

Sewell's counsel appealed the denial on May 16, 2023, and submitted additional documentation including a report prepared by Dr. Thomas Arnold (AR 516-548) to Sewell's counsel.  Lincoln then requested a medical review, which was conducted by Dr. Peggy Geimer on June 7, 2023 (AR 497-502).  Dr. Geimer's report noted that Dr. Arnold's report relied upon medical records from Port Aransas EM and Corpus Christi Medical Center that were not provided to Lincoln for review.  Accordingly, it is reasonable that Dr. Geimer did not further address Dr. Arnold's report in her original report.  Dr. Geimer's report was sent to Sewell's counsel on July 15, 2023 (AR 489). Lincoln also advised Sewell's counsel that even though he had referred to pages 1-269 in his correspondence, only pages 1-30 were received by Lincoln.  Sewell's counsel then sent these to Lincoln on August 25, 2023. (AR 46 (Life Note 59) and 477-478.)  Dr. Geimer then prepared an addendum report on September 7, 2023, which addressed Dr. Arnold's previous report and the records upon which he based his report (AR 137-144).  Lincoln upheld the denial of benefits on

---

[1]    "AR," "Policy," and "Add'l Documents" herein reference the bates-labeled documents attached to Lincoln's Response to ERISA Case Order (Document 10).

September 26, 2023 (AR 105-114). As Sewell had exhausted administrative remedies, the claim file was then closed.

Subsequent to Lincoln's final appeal decision, on November 17, 2023, Sewell's counsel submitted an additional medical report prepared by Dr. Arnold (Add'l Documents 66-70). However, since the November 17, 2023, report was received after the final appeal decision, Lincoln wrote Sewell's counsel that Sewell has been given and taken an opportunity to appeal and provide additional information, but the file was closed because administrative remedies had been exhausted. Accordingly, Lincoln would not consider the report that was submitted to it after its final decision (Add'l Documents 65).

The above-styled litigation was filed on November 30, 2023. On March 6, 2024, the Court entered a Rule 16 Scheduling Order for ERISA Benefits Case to Be Determined on Administrative Record (Doc. 9). The Court's Order required Lincoln, by May 1, 2024, to file a Response to ERISA Case Order, "attaching copy of the applicable insurance policy and complete Administrative Record." Additionally, the Order set a deadline of June 10, 2024, for the Parties to file Cross-Motions for Judgment on Administrative Record with Accompanying Memoranda.

On May 1, 2024, Lincoln filed Defendant's Response to ERISA Case Order (Doc. 10) and specifically asserted that the November 17, 2023, report is not part of the administrative record. However, in a telephone call between the Parties' counsels regarding this issue on May 13, 2024, Sewell's counsel argued that this post-appeal submission is part of the administrative record, and Lincoln does not agree with this argument for the reasons stated in Section II below. However, to remove this issue of contention between the Parties, Lincoln proposed that it would conduct another review of the claim. Sewell is opposed to this additional review because he states that, "Lincoln's claim that the granting of its motion [for extension] 'may result in Lincoln's decision being

overturned' is ludicrous. We all know that will not happen." Sewell's Motion for Reconsideration at p. 7. However, this statement ignores that Lincoln is obligated to give the same full and fair review under these circumstances as it would under the initial review or the appeal review. Sewell cannot accuse Lincoln of acts that there is no evidence it will commit. Indeed, Lincoln's proposal to conduct the additional review is a demonstration of its commitment to the full and fair review process.

**II.**
**CONTEXT OF THE *VEGA* DECISION AND APPLICATION TO THIS CASE**

While Lincoln desires to simply remove the issue of whether Dr. Arnold's November 17, 2023, report is part of the administrative record by conducting the initial review it has proposed, Lincoln does not believe the case upon which Sewell relies, *Vega v. National Life Insurance Services, Inc.,* 188 F.3d 287, 299 (5th Cir.1999), applies to Sewell's fully-exhausted claim.

In enacting ERISA, a primary concern of Congress was to avoid creating "a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place." *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996). A key component of the Congressional strategy in this regard "was to provide a method for workers and beneficiaries to resolve disputes of benefits inexpensively and expeditiously." *Perry v. Simplicity Engineering.*, 900 F.2d 963, 967 (6th Cir. 1990). As the Ninth Circuit has observed, "[p]ermitting or requiring district courts to consider evidence… that was not presented to the plan administrator would seriously impair the achievement of that goal." *Taft v. Equitable Life Assurance Society*, 9 F.3d 1469, 1472 9th Cir. 1994) (citing *Sandoval v. Aetna Life & Casualty Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992)). Sewell's desire to expand the Administrative Record with Dr. Arnold's second report is wholly inconsistent with these principles.

The Fifth Circuit precludes admission of the documentation Sewell seeks to add to the administrative record. *Vega v. National Life Insurance Services, Inc.,* 188 F.3d 287 (5th Cir.1999); *Crosby v. Louisiana Health Service and Indemnity Co.*, 647 F.3d 258 (5th Cir. 2011).

> Vega prohibits the admission of evidence to resolve the merits of the coverage determination—i.e. whether coverage should have been afforded under the plan—unless the evidence is in the administrative record, relates to how the administrator has interpreted the plan in the past, or would assist the court in understanding medical terms and procedures. **A plan participant is not entitled to a second chance to produce evidence demonstrating that coverage should be afforded.**

*Crosby*, 647 F.3d at 263 (citations omitted) (emphasis added). Therefore, Sewell does not get a second chance to produce documentation to support his claim, which is the essence of Sewell's Response.

However, the Fifth Circuit continued, stating,

> We hold today that the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it. Thus, if the information in the doctors' affidavits had been presented to National Life before filing this lawsuit in time for their fair consideration, they could be treated as part of the record.

Id. (emphasis added). In analyzing this language in *Vega*, it is important to consider the context in which this opinion was rendered. The plaintiff's claim for benefits had been denied, and no appeal was submitted by the plaintiff. Accordingly, administrative remedies regarding the claim had not been exhausted. The Court noted that the administrator's letter to the claimant invited submission of an appeal, but the Court also noted that claimant did not pursue an appeal, but instead, hired an attorney who wrote a demand letter to the employer to which the employer responded it was ready to go to court. Accordingly, the claimant had never taken an opportunity to submit additional documentation to the administrator after the claim was initially denied. Accordingly, this language

from *Vega* opinion should be considered in the context in which it was made, which was when no appeal was submitted by the claimant.

No subsequent decision by the Fifth Circuit has answered the specific question of what "in time for their fair consideration" will mean with regard to documents submitted to the administrator after the final decision on an appeal, but before suit has been filed. However, a decision in the Western District of Texas, *Provencio v. SBC Disability Income Plan*, No. SA-05-CA-0032-WWJ (W.D. Tex. Dec. 6, 2006) (copy attached) found that letters and documents submitted 2 weeks, 1 month, 4 months, and 7 months after the final appeal decision were not part of the administrative record. Additionally, one unpublished opinion from the Eastern District of Louisiana discussed the problem created by the *Vega* dicta. *Needham v. Tenet Select Benefit Plan*, No. 02-3291, 2004 WL 193131 (E.D. La, Jan. 30, 2004) (copy attached). Recognizing that this language in *Vega* might support the inclusion of the documents submitted after a final decision, the Court realized *Vega* did not answer the question, "At what point, if any, may an administrator close its file and simply refuse to consider new evidence?" The District Court in the *Needham* case was able to skirt the question because it held that the issue was not determinative as it was apparent the administrator's decision was an abuse of discretion even when considering only those documents received prior to the appeal decision, as urged by the administrator.[2]

To require a claim to be reopened to consider any and all documentation submitted before a lawsuit is filed would create a "never-ending" appeal process by which a claimant could continue to keep a claim alive forever simply by sending another document to Lincoln after Lincoln's previous decision on the claim. Such a never-ending appeal process will increase plan administration costs for the plan and thus, result in reduced benefits or increased costs for plan participants.

---

[2] Likewise, the Fifth Circuit detailed the inherent problems with the issue in *Keele v. JP Morgan Chase Long Term Disability Plan*, 221 F. App'x 316, 319 (5th Cir. 2007).

Therefore, it is clear that the Court's review in this action must be based on the administrative record as it existed at the time of Lincoln's September 26, 2023, decision on Sewell's appeal of the termination of benefits.

### III.
### GROUNDS FOR MOTION TO EXTEND TO FACILITATE ADDITIONAL REVIEW

The Parties disagree regarding whether the November 17, 2023, report is part of the administrative record. To resolve this dispute between Sewell and Lincoln and to conserve the Court's efforts in its consideration of the matter, as well as eliminate the need for any potential Court remand for Lincoln to consider the report, Lincoln proposes an additional review of Sewell's claim, which will include the November 17, 2023, report. Sewell's counsel has also been advised that Sewell may submit whatever additional documentation that he desires Lincoln consider in connection with this review of the claim.

As the additional review of Sewell's claim may lead to a reversal of Lincoln's decision on the claim that is the subject of this litigation, Lincoln requests that the Court extend the June 10, 2024, deadline for the Parties' Cross-Motions until Lincoln's additional review is complete. To continue the litigation while the additional review is ongoing will result in the unnecessary usage of judicial resources and needless legal expenses by the Parties if the claim decision is overturned by Lincoln.

Moreover, District Courts have full discretion to grant extensions of time for good cause. *Fed. R. Civ. P.* P. 6(b)(1)(A). "An application for extension of time under Rule 6(b)(1)(A) normally will be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party." *4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 1165 (4th ed. 2008). Lincoln does not seek this extension for bad faith but to conduct an additional review of Sewell's claim. Additionally, Sewell will not be prejudiced as a result of this extension, as it will

resolve an issue of contention between the Parties that may result in Lincoln's decision being overturned and if not, will eliminate any need by the Court to order the claim remanded to Lincoln for consideration of the Report after considering the Parties' briefs.

It is estimated that this review will be completed within sixty (60) days after Sewell submits any additional documentation that he wants Lincoln to consider. Accordingly, Lincoln requests that the Court extend the Cross-Motion deadline to August 13, 2024, which is ninety (90) days from the filing of this Motion. This 90-day extension includes giving Sewell thirty (30) days to submit documentation in addition to 60 days for the review. Lincoln further proposes that the Court require the Parties to file a Status Report on or before August 13, 2024, to advise the Court of the status of Lincoln's additional review.

## IV.
## CONCLUSION

WHEREFORE, Lincoln requests that the Court enter an order granting Lincoln's Motion for Extension, and granting Lincoln such other and further relief to which it may show itself entitled.

Dated this 17th day of May 2024.

Respectfully submitted,


By: ___/s/ Iwana Rademaekers_____
Iwana Rademaekers, Attorney in Charge
State Bar of Texas No. 16452560
S.D. of Texas No. 22781
LAW OFFICES OF IWANA
RADEMAEKERS, P.C.
17304 Preston Road, Suite 800
Dallas, Texas 75252
Main: (214) 579-9319
Fax: (469) 444-6456
Email: iwana@rademaekerslaw.com

ATTORNEYS FOR DEFENDANT THE
LINCOLN NATIONAL LIFE INSURANCE
COMPANY

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing pleading was electronically filed with the clerk for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. I further certify that a copy of the foregoing pleading was served via electronic mail on the following counsel of record:

J. PRICE McNAMARA
Email: price@jpricemcnamara.com


  May 17, 2024                           /s/ Iwana Rademaekers
Date                                    Iwana Rademaekers