**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **TIMOTHY SEWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Case No. 2:23-cv-00317** |
| **THE LINCOLN NATIONAL LIFE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

By:  /s/ Iwana Rademaekers
Iwana Rademaekers, Attorney in Charge
State Bar of Texas No. 16452560
S.D. of Texas No. 22781
LAW OFFICES OF IWANA RADEMAEKERS, P.C.
17304 Preston Road, Suite 800
Dallas, Texas 75252
Main:  (214) 579-9319
Fax:  (469) 444-6456
Email:  iwana@rademaekerslaw.com

ATTORNEYS FOR DEFENDANT THE
LINCOLN NATIONAL LIFE INSURANCE
COMPANY

# **TABLE OF CONTENTS**

I. RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT ...............1

    A.  To Prevail, Sewell Has the Burden to Show that Lincoln's Denial of Sewell's Claim for AD&D Benefits Was an "Abuse of Discretion.".................................................1

    B.  Even Assuming that *Vega* Requires the Inclusion of Dr. Arnold's November 17, 2023, Report in the Administrative Record, the Appropriate Remedy Would Have Been for the Court to Remand the Claim to Lincoln for Reconsideration; Lincoln's Voluntary Reconsideration of Sewell's Claim Was Consistent with the Courts' Goal of Avoiding "Judicial Resolution of Purely Administrative Benefits Determinations."................................................................................................5

    C.  The Administrative Record Contains Substantial Evidence that Supports Lincoln's Denial of Sewell's Claim for AD&D Benefits......................................................9

II. CONCLUSION AND PRAYER...............................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Cytec Indus.*, 619 F.3d 505, 516 and n.9 (5th Cir. 2010)...............................................6

*Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 138 (5th Cir. 2016)..........................................5

*Clark v. Cingular Wireless Bargained*, CA No. 7:09-CV-177-O, 2010 U.S. Dist. LEXIS 163580 *11 (N.D. Tex. Dec. 23, 2010) ...................................................................................6

*Colvin v. 88 Bd.*, CA No. SA 17-CV-974-XR, 2018 U.S. Dist. LEXIS 61818 *17-18 (W.D. Tex. Apr. 11, 2018)....................................................................................................6

*Conkright v. Frommert*, 559 U.S. 506, 516-518, (2010) ...................................................................3

*Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007)...................4, 16

*Dutka v. AIG Life Ins. Co.*, 573 F.3d 210, 214 (5th Cir. June 24, 2009) ........................................10

*Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)................................4

*Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)................................................2

*George v. Reliance Stand. Life Ins. Co.*, 776 F.3d 349, 352, 354 (5th Cir. 2015).....................4, 12

*Gothard v. Metro. Life Ins. Co.*, 491 F.3d 246, 2007 WL 1830736, at *3 (5th Cir. 2007) ...........16

*Hargrave v. Parker Drilling Co.*, 2010 U.S. Dist. LEXIS 93534 at 17 (W.D. La. Aug. 25, 2010) ........................................................................................................................................10

*Hill v. Aetna Life Ins. Co.,* 546 F. Supp. 2d 343, 351 (546 F. Supp. 2d 343, 351 (S.D. Miss. 2008) ..............................................................................................................................10

*Hillebrandt v. Unum Life Ins. Co. of Am.*, CA No. 16-cv-844, 2017 U.S. Dist. LEXIS 219303 *12-13 ...................................................................................................................6

*Holland v. International Paper Co. Retirement Plan*, 576 F.3d 240, 250 (5th Cir. July 16, 2009) ........................................................................................................................................16

*Jimenez v. Sun Life Assurance. Co. of Canada*, 486 F. App'x 398, 406-408 (5th Cir. 2012) ........................................................................................................................................3

*Jones v. Channel Shipyard & Co.*, 2001 U.S. Dist. LEXIS 19639 at 10 (E.D. La. Nov. 20, 2001) ........................................................................................................................................10

*Jones v. Metro. Life Ins. Co.*, CA No. H-12-1955, 2013 U.S. Dist. LEXIS 75397 *16 (S.D. Tex. May 29, 2013) ................................................................................6

*Keele v. JP Morgan Chase Long Term Disability Plan*, 221 F. App'x 316, 319-20 (5th Cir. 2007) .............................................................................................5

*McCann v. Unum Provident*, CA No. 11-3251 (MLC), 2013 U.S. Dist. LEXIS 147269, *13 (D. N.J. October 11, 2013) ..................................................................5

*Meditrust Financial Services Corp. v. Sterling Chemicals, Inc.*, 168 F.3d 211, 213, 214, 215 (5th Cir. 1999) ...............................................................................1

*Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 128 S.Ct. 2343, 2351 (2008) ...........................5

*Needham v. Tenet Select Benefit Plan*, No. Civ.A. 02-3291, 2004 U.S. Dist. LEXIS 1267 at *22-23, (E.D. La. Jan. 30, 2004) ........................................................5

*Nichols v. Hartford Life & Accident Ins.*, 2014 U.S. Dist. LEXIS 196645 at 12 (S.D. Tex. June 9, 2014) ..................................................................................10

*Rittinger v. Healthy Alliance*, 914 F.3d 952, 955, 958 (5th Cir. 2019) ....................................3, 14

*Sanford v. Zurich Am. Ins. Co.*, 2009 U.S. Dist. LEXIS 84327 at 10-11 (N.D. Miss Sept. 15, 2009) .......................................................................................10

*Singletary v. Prudential Ins. Co. of Am.*, 828 F.3d 342, 351 (5th Cir. 2016) ..................................3

*Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 300 (5th Cir. 1999) ..........................................5

*Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 233 (5th Cir. 2004) .................................17


**STATUTES**

29 U.S.C. § 1132(a)(1)(B) .........................................................................................17

29 U.S.C. § 1132(g) ..................................................................................................17

Tex. Ins. Code § 1701.062 ..........................................................................................2

TIMOTHY SEWELL, )
)
              **Plaintiff,** )
)
vs. )
)     **Case No. 2:23-cv-00317**
)
**THE LINCOLN NATIONAL LIFE** )
**INSURANCE COMPANY,** )
)
            **Defendant.** )

## DEFENDANT'S RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Defendant The Lincoln National Life Insurance Company ("Lincoln") files this Response to Plaintiff's Cross-Motion for Summary Judgment and Brief in Support.[1] This Response is supported by Lincoln's Motion for Summary Judgment and Brief in Support (D.E. 24, 24-2, and 24-3), as well as the administrative record, the Policy, and Lincoln's final appeal decision, which are all attached to Defendant's Amended Response to ERISA Case Order (D.E. 21-1, 21-2, 21-3, 21-4, and 21-5) filed by Lincoln on August 8, 2024. All of these documents are fully incorporated by reference into this Response and Brief.

**I.**
## RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

**A.    To Prevail, Sewell Has the Burden to Show that Lincoln's Denial of Sewell's Claim for AD&D Benefits Was an "Abuse of Discretion."**

In the ERISA context, it is well established that in reviewing the denial of benefits under an ERISA plan, the court will apply an "abuse of discretion" standard if the plan document grants such discretionary authority to the administrator. *Meditrust Financial Services Corp. v.*

---

[1]    Exhibits 1 through 4 referenced throughout this Motion and Brief refer to the Exhibits attached to Defendant's Amended Response to ERISA Case Order (D.E. 21), specifically, Ex. 1 at D.E. 21-1, Ex. 2 at D.E. 21-2, Ex. 3 at D.E. 21-3 and D.E. 21-4, and Ex. 4 at D.E. 21-5.

*Sterling Chemicals, Inc.*, 168 F.3d 211, 213 (5th Cir. 1999).  The Group Life Insurance Policy (the "Policy") issued by Lincoln to McLarens, LLC ("McLarens") specifically states, "Lincoln shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder.  Lincoln's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding."[2]  Therefore, in reviewing Lincoln's decision to deny AD&D benefits to Sewell, the Court must apply an abuse of discretion standard.  *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

Sewell disputes that the abuse of discretion standard applies, because he states that the Texas statute banning discretionary clauses (Tex. Ins. Code § 1701.062) applies to Sewell's claim under the Policy.  However, the Policy states, "Governing Jurisdiction is Georgia and subject to the laws of that State."[3]  The Policy further provides, "This policy is delivered in and governed by the laws of the governing jurisdiction and to the extent applicable by The Employee Retirement Income Security Act of 1974 (ERISA) and any subsequent amendments."[4]  Accordingly, Georgia law and not Texas law applies to the Policy and Sewell's claim for benefits from the McLarens, LLC Group Life Insurance Plan (the "Life Plan") under the Policy.  Georgia does not have a statute that bans the application of discretionary language in insurance policies such as the Policy at issue in this action, so the appropriate standard of review under *Firestone* is the abuse of discretion standard.

Moreover, the choice of law provision in the Policy is reasonable in that the policyholder, McLarens, which Lincoln issued the Policy to, was founded in[5] and has its corporate headquarters in Atlanta, Georgia,[6] and its Global Chief People Officer offices at the corporate

---

[2]  Ex. 1, Policy, Lincoln/Sewell 38 (D.E. 21-1, Page 38).
[3]  Ex. 1, Policy, Lincoln/Sewell 1 (D.E. 21-1, Page 1).
[4]  Ex. 1, Policy, Lincoln/Sewell 1 (D.E. 21-1, Page 1).
[5]  https://www.mclarens.com/who-we-are/#timeline
[6]  https://www.mclarens.com/who-we-are

headquarters in Atlanta.[7]  Additionally, the Life Plan covers a vast number of employees located across at least 28 states.[8]  Accordingly, it makes sense to apply the law of one state in accordance with the McLaren's and Lincoln's bargained-for choice of law.  Doing so is consistent with a principal public policy aim of ERISA to encourage sponsors to adopt benefit plans, particularly multi-state plans like McLarens', by ensuring uniform, cost-effective administration that is not dependent upon a patchwork of different states' laws.  Moreover, "*Firestone* deference serves the interest of uniformity, helping to avoid a patchwork of different interpretations of a plan . . . that covers employees in different jurisdictions.  *Conkright v. Frommert*, 559 U.S. 506, 516-518, (2010).

Moreover, Sewell has not met his burden[9] to establish why the Policy's choice of law should not be applied.  Indeed, Sewell has not acknowledged the Policy's choice of Georgia law or made any argument why Georgia law should not apply.  However, even if Sewell were to argue that Texas law should apply because either Texas has a strong interest in protecting its citizens or persons who live in Texas should expect Texas law should apply to the Policy, those arguments were rejected by the Fifth Circuit in *Jimenez v. Sun Life Assurance. Co. of Canada*, 486 F. App'x 398, 406-408 (5th Cir. 2012).  *See also*, *Singletary v. Prudential Ins. Co. of Am.*, 828 F.3d 342, 351 (5th Cir. 2016); *Rittinger v. Healthy Alliance*, 914 F.3d 952, 955 (5th Cir. 2019) (Texas ban on discretionary ban provision will not be applied when the relevant policy contained a Missouri choice of law provision).  Therefore, the Policy's choice of law provision is enforceable, and Georgia law governs the Policy and Sewell's claim to the extent not preempted by ERISA.

---

[7]  https://www.mclarens.com/staff-directory/sonya-tolson/
[8]  McLarens has locations in Alabama, Arizona, California, Colorado, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nevada, New Jersey, New York, North Carolina, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, and Washington.  https://www.mclarens.com/office/
[9]  *Jimenez*, 486 F. App'x at 408.

Additionally, with regard to the burden of proof to prevail on his claim, Sewell has "the burden to show that the administrator abused its discretion." *George v. Reliance Stand. Life Ins. Co.*, 776 F.3d 349, 352 (5th Cir. 2015). The Fifth Circuit has not adopted the position urged by Sewell that it would be Lincoln's burden to prove the applicability of the Policy exclusion. Accordingly, the question this Court must answer is, does Sewell meet his burden to show that Lincoln abused its discretion in denying Sewell's claim – period.

Moreover, it is the evidence in the administrative record that supports Lincoln's decision that should be the focus of the Court's inquiry, and not any evidence that may support Sewell's claim. In *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004), the Fifth Circuit held that, under ERISA, Plaintiff's claim for recovery of benefits does not prevail "merely because he has supported his claim with substantial evidence, or even with a preponderance." *Ellis*, 394 F.3d at 273. "If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail." Id. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis*, 394 F.3d at 273. Ultimately, "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness – even if on the low end." *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007).

Finally, the degree of deference that must be given to Lincoln's decision is not decreased due to Lincoln's conflict by acting as both the claims administrator and the insurer with regard to Sewell's claim for benefits from the Life Plan under the Policy, which is the sole source of Lincoln's alleged conflict of interest in this action. "A structural conflict alone does not entitle

[Sewell] to an altered standard of review." *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 138 (5th Cir. 2016). Moreover, conflict can prove less important, even to the vanishing point, where the entity in question has taken affirmative steps to reduce potential bias and promote accuracy. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343, 2351 (2008). There is evidence before the Court that Lincoln took affirmative steps to reduce potential bias and ensure accuracy in its claim process.[10] Accordingly, the importance of Lincoln's conflict should be reduced to the vanishing point in the Court's consideration of whether Lincoln abused its discretion.

**B.** **Even Assuming that *Vega* Requires the Inclusion of Dr. Arnold's November 17, 2023, Report in the Administrative Record, the Appropriate Remedy Would Have Been for the Court to Remand the Claim to Lincoln for Reconsideration; Lincoln's Voluntary Reconsideration of Sewell's Claim Was Consistent with the Courts' Goal of Avoiding "Judicial Resolution of Purely Administrative Benefits Determinations."**

In dicta, the Fifth Circuit has stated that any documentation submitted to the administrator before suit is filed will be considered part of the administrative record. *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 300 (5th Cir. 1999). However, it is important to note the context of Vega, which is that no appeal was required by the plan or submitted by the claimant. Moreover, "The Fifth Circuit case of *Vega* has been rejected by other jurisdictions and has indeed been questioned by the Fifth Circuit itself." *McCann v. Unum Provident*, CA No. 11-3251 (MLC), 2013 U.S. Dist. LEXIS 147269, *13 (D. N.J. October 11, 2013) (copy attached). Specifically, in a subsequent case, the Fifth Circuit acknowledged the issues with this supposition, *Keele v. JP Morgan Chase Long Term Disability Plan*, 221 F. App'x 316, 319-20 (5th Cir. 2007) citing *Needham v. Tenet Select Benefit Plan*, No. Civ.A. 02-3291, 2004 U.S. Dist. LEXIS 1267 at *22-23, (E.D. La. Jan. 30, 2004) (copy attached):

---

[10]   Declaration of Kayla Bick, Exhibit A to Lincoln's Motion for Summary Judgment (D.E. 24-2), at ¶¶ 4-8.

Does an administrator ipso facto abuse its discretion by refusing to reconsider its decision after the administrative appeal process is concluded? At what point, if any, may an administrator close its file and simply refuse to consider new evidence? If an administrator legitimately may take this position eight months after denying a claimant's appeal, is it not inconsistent with the abuse of discretion standard of review for the Court to then judge the reasonableness of the denial in light of evidence submitted post hoc?

See also, *Anderson v. Cytec Indus.*, 619 F.3d 505, 516 and n.9 (5th Cir. 2010).

In essence, following the *Vega* dicta when an appeal was submitted and considered will result in an endless opportunity for a claimant to submit documents prior to filing a lawsuit. If all of these documents must be reviewed by the administrator, when does the administrator have a right to say, "enough!" This is the reason that, at most, the *Vega* dicta should be limited to the context of the facts of that case, which is that there was no appeal and no decision by the administrator beyond the initial claim decision.

However, some Courts within the Fifth Circuit have construed *Vega* to apply to claims in which an appeal was submitted and considered. In those circumstances, Courts generally remand the claim to the administrator to consider the additional documentation, rather than issue an initial determination on the record including the post-appeal documentation. *Jones v. Metro. Life Ins. Co.*, CA No. H-12-1955, 2013 U.S. Dist. LEXIS 75397 *16 (S.D. Tex. May 29, 2013) ("A primary goal of remand is to avoid judicial resolution of purely administrative benefits determinations."); *Colvin v. 88 Bd.*, CA No. SA 17-CV-974-XR, 2018 U.S. Dist. LEXIS 61818 *17-18 (W.D. Tex. Apr. 11, 2018) ("It would be improper for this Court to evaluate the information without the plan administrator first having the opportunity to do so."); *Hillebrandt v. Unum Life Ins. Co. of Am.*, CA No. 16-cv-844, 2017 U.S. Dist. LEXIS 219303 *12-13; *Clark v. Cingular Wireless Bargained*, CA No. 7:09-CV-177-O, 2010 U.S. Dist. LEXIS 163580 *11 (N.D. Tex. Dec. 23, 2010). (copies attached)

However, Sewell objects to Lincoln's reconsideration of his claim after the suit was filed. Despite having been given the opportunity to submit (and actually having submitted) additional information during this re-review, Sewell argues that Lincoln's reconsideration of Sewell's claim was improper. As background, while compiling the administrative record for the Court in connection with Lincoln's Response to the ERISA Case Order[11] that was filed on May 6, 2024, Lincoln's counsel determined that Sewell's counsel had submitted a new report to Lincoln after Lincoln had considered Sewell's appeal and upheld its decision on Sewell's claim. Lincoln's counsel then telephoned Sewell's counsel to discuss the matter and suggested that if Sewell considered this report to be part of the administrative record, Lincoln would voluntarily reconsider the claim. Additionally, Lincoln's counsel advised Sewell's counsel that Lincoln would consider any additional documentation Sewell submitted during the reconsideration process. Lincoln's counsel also suggested that the action be stayed while the claim consideration took place. Lincoln's stated purpose was to avoid the potential of the Parties briefing the case, and the Court finding that remand for reconsideration was warranted at that point, which would be many months down the road. During this period, both counsel spoke with their respective clients, and Sewell's counsel advised Lincoln's counsel that Sewell opposed Lincoln's reconsideration of his claim and would not agree to a stay of the litigation.

On May 15, 2024, Lincoln filed its opposed Motion to Extend Cross-Motion Deadline to accommodate the reconsideration,[12] which was granted and a new briefing schedule and deadline for an Amended Response to ERISA Case order was set.[13] Subsequently, Sewell's counsel asked that those new deadlines be extended to allow Sewell to submit additional documentation

---

[11]   Defendant's Response to the ERISA Case Order (D.E. 10).
[12]   Motion to Extend Cross-Motion Deadline and Brief in Support (D.E. 11).
[13]   Order Granting Defendant's Motion for Extension (D.E. 17).

to Lincoln for consideration, and Lincoln agreed to that request.[14]  A Joint Motion to extend the deadlines was then filed,[15] which was granted by the Court.[16]  Under the new deadlines, Lincoln filed an Amended Response to the ERISA Case Order containing all of the documents pertaining to Lincoln's reconsideration of Sewell's claim.[17]

Sewell faults Lincoln for not immediately considering the November 17, 2023, report that was submitted after the appeal was closed, but paradoxically, Sewell objects to Lincoln's reconsideration of Sewell's claim.  Nevertheless, Sewell fails to explain the delay in providing the report to Lincoln.  Sewell's original appeal contained Dr. Arnold's April 28, 2023, report.  Lincoln obtained an additional review, which was completed by Peggy Geimer, M.D., on June 7, 2023.  On July 15, 2023, Lincoln sent Sewell's counsel a copy of Dr. Geimer's clinical review and advised him of the opportunity to review and respond with any additional information for consideration before a final determination was made on the appeal.[18]  Sewell's counsel then submitted additional medical records and affidavits.  However, before the appeal decision, Sewell's counsel did not submit any additional medical report to respond to Dr. Geimer's June 7th report, and Sewell provides no explanation for waiting until after Lincoln denied the appeal to provide an additional medical report.

Accordingly, although Lincoln argues that it was not required to consider Dr. Arnold's November 17, 2023, report, it voluntarily did so to avoid any potential remand in this case that would further delay a definitive decision by the Court.  Therefore, the Court should consider all of the documents that Lincoln filed with its Amended Response to ERISA Case Order on August 8, 2024.

---

[14]   Joint Motion to Extend Deadlines to Supplement the Administrative Record and to File Cross-Motions for Judgment (D.E. 18 at ¶ 2).
[15]   Joint Motion to Extend Deadline to File Cross-Motions for Judgment (D.E. 22).
[16]   Order (D.E. 20).
[17]   Defendant's Amended Response to ERISA Case Order (D.E. 21).
[18]   Ex. 3, Administrative Record, Lincoln/Sewell 488-490 (D.E. 21-4, Pages 15-17).

**C.**     <u>**The Administrative Record Contains Substantial Evidence that Supports Lincoln's Denial of Sewell's Claim for AD&D Benefits.**</u>

The administrative record, which is the documentation before Lincoln on August 2, 2024, the date it denied Sewell's final appeal, clearly contains overwhelming evidence in support of Lincoln's decision to apply the Policy's exclusion, which states:

> No benefits are payable for any loss that is contributed to or caused by:
> . . .
> 11. the presence of alcohol in the Covered Person's blood which raises a presumption that the Covered Person was under the influence of alcohol and contributed to the cause of the accident. The blood alcohol level is governed by the jurisdiction of the state in which the accident occurred.[19]

Not only did Lincoln not abuse its discretion in applying the alcohol exclusion to Sewell's claim for AD&D benefits, but Lincoln also undoubtedly made the correct decision, as explained below.

Sewell's Motion ignores the Policy language that the .222% BAC raises a presumption that Sewell's alcohol use contributed to the cause of the incident. The Policy exclusion that Lincoln applied to Sewell's claim[20] is significant and unique. Rather than simply stating that benefits are not payable if alcohol use caused or contributed to the accident, the Policy states that a presumption is raised that Sewell's alcohol use, as reflected by the .222% BAC, contributed to the incident that led to his quadriplegia. Additionally, Sewell's BAC far exceeded the .08% threshold for legal intoxication in Texas, which satisfies the other criteria in the Policy exclusion.

This means that it is presumed the exclusion will be applied unless the contents of the administrative record provide evidence to effectively rebut the presumption. When this is coupled with the applicable standard of review in this case, it means that Lincoln's decision must be upheld by the Court unless it finds that Lincoln abused its discretion in determining that the

---

[19]    Ex. 1, Policy, Lincoln /Sewell 33 (D.E. 21-1, Page 33).
[20]    Ex. 1, Policy, Lincoln /Sewell 33 (D.E. 21-1, Page 33).

presumption was not rebutted, effectively adding another hurdle to Sewell's path to recovery of benefits in this Court.

Nevertheless, even without the presumption being in place due to the Policy language, it is clear that Sewell's alcohol use contributed to the incident. Courts within the Fifth Circuit have upheld administrator's denial of claims when a BAC of .05% (minor driver),[21] .138%,[22] .161%,[23] .167%,[24] or .22%,[25] were found by the administrator to have caused or contributed to the incident at issue in the case.

With regard to what "contributed to or caused by" in the Policy exclusion means, the Fifth Circuit has stated that even if there is no direct proof that alcohol consumption caused or contributed to Sewell's incident, that does not mean the administrator erred in denying benefits because there rarely is such direct proof. The evidence will always be circumstantial, and Courts should consider the nature of the incident in making that determination. *Dutka v. AIG Life Ins. Co.,* 573 F.3d at 210, 214.

When considering the nature of Sewell's incident, as Dr. Millstein and Dr. Swotinsky noted, a BAC at the .222% level would result in impaired judgment and cognition and impaired detection of danger. Even assuming that Sewell's affidavit, which was prepared 20 months after the incident, is a reliable source of information, Sewell does not state in the affidavit that he entered the water to check for depth or that he jumped in feet first to determine if it was safe to dive. Sewell does not state that others who were on the boat with him dove or jumped in or

---

[21] *Jones v. Channel Shipyard & Co.*, 2001 U.S. Dist. LEXIS 19639 at 10 (E.D. La. Nov. 20, 2001) (copy attached).

[22] *Hargrave v. Parker Drilling Co.*, 2010 U.S. Dist. LEXIS 93534 at 17 (W.D. La. Aug. 25, 2010) (copy attached).

[23] *Sanford v. Zurich Am. Ins. Co.*, 2009 U.S. Dist. LEXIS 84327 at 10-11 (N.D. Miss Sept. 15, 2009) (copy attached).

[24] *Nichols v. Hartford Life & Accident Ins.*, 2014 U.S. Dist. LEXIS 196645 at 12 (S.D. Tex. June 9, 2014) (copy attached).

[25] *Hill v. Aetna Life Ins. Co.,* 546 F. Supp. 2d 343, 351 (546 F. Supp. 2d 343, 351 (S.D. Miss. 2008).

entered the water before he did.  Sewell admits that he dove into murky water without taking any of the normal precautions that a person without impaired judgment due to alcohol consumption would take in these circumstances.[26]  Safety standards for entering an unknown body of water are well known, and Sewell violated a number of those standards, further evidencing reckless behavior by Sewell that is explained by his level of intoxication.  Sewell's affidavit stated that he had experience diving into "ponds, lakes, rivers, and other natural bodies of water,"[27] so his experience would indicate that he would have been aware of safety rules for diving into natural bodies of water.  His reckless behavior in not being cautious, diving into murky water that he thought was 4.5 feet deep, diving from the rear deck of a boat, and after he had been drinking provide additional circumstantial evidence that his intoxication was the reason for his failure to follow known safety standards.[28]

As Dr. Geimer stated, "The presence of alcohol in Mr. Sewell's blood caused or contributed to the incident which resulted in his cervical spine injury because it affected his judgment regarding safety and the dangers of diving into water of uncertain depth."[29]  Moreover, Dr. Millman pointed out,[30]

> Alcohol consumption is also important risk factor [for spinal cord injuries following diving into shallow water], thought to be contributory and 38 to 49% of cervical injuries in previously published series.4[31]

---

[26]   Ex. 3, Administrative Record, Lincoln/Sewell 159 (D.E. 21-3, Page 105).
[27]   Liberty/Sewell 182 at ¶ 13.
[28]   For example, the Red Cross standards state the following:
  Enter the water feet first for your safety!
  Always enter unknown or shallow water cautiously.
  Dive only in water clearly marked as safe for diving, at least 9 feet deep with no underwater obstacles.
  Do not enter the water from a height, such as a bridge or boat.
  Swim sober.
  https://www.redcross.org/get-help/how-to-prepare-for-emergencies/types-of-emergencies/water-safety/lake-river-safety.html#:~:text=Do%20not%20enter%20the%20water,or%20using%20a%20cell%20phone
[29]   Ex. 3, Administrative Record, Lincoln/Sewell 497 (D.E. 21-4, Page 24).
[30]   Ex. 3, Administrative Record, Lincoln/Sewell 641-642 (D.E. 21-4, Pages 168-169).
[31]   Footnote 4 cite:  Pierre-Yves Borius, Ismail Gouader, Philippe Bousquet, Louisa Draper, and Franck Emmanuel Roux. *Cervical spine injuries resulting from diving accidents in swimming pools: outcome of 34 patients* Eur Spine J. 2010 Apr; 19(4): 552–557. Lincoln/Sewell 643 (D.E. 21-4 Page 170).

Types of accidents associated with traumatic cervical spinal cord injury include motor vehicle crashes in sport related accidents – in particular, diving accidents. Numerous studies have shown that 50% of spinal cord injuries occur while victims are under the influence of alcohol. A 2004 study of persons who sustained spinal cord injury supported the association between alcohol use and cervical spinal cord injury specifically – the spinal cord injury type with the most severe consequences. The study that demonstrated that participants with cervical injury were more likely to use alcohol when injured compared with participants without cervical injury.5[32]

That 50% of all spinal cord injuries occur while the victims are under the influence of alcohol is a telling statistic. Given that only a very small percentage of the population could be expected to be under the influence of alcohol at any one time, 50% of the accidents coming from that small population of people who are under the influence is quite significant. The same can be said for the statistic that 38-49% of all spinal cord injuries resulting from diving into shallow water are connected to alcohol use. Again, of all the population of people diving into water at any given time, only a small percentage of them would be expected to be intoxicated, yet that group makes up 38-49% of all of the people who suffer a cervical injury as a result. A study cited by Dr. Swotinsky found that alcohol use results in a 4.31-fold increase in risk of a spinal cord injury while diving, meaning that 78% of all such diving accidents are attributable to alcohol use.[33] As Dr. Geimer stated, "The presence of alcohol in Mr. Sewell's blood caused or contributed to the incident which resulted in his cervical spine injury because it affected his judgment regarding safety and the dangers of diving into water of uncertain depth."[34]

Substantial[35] (more than a scintilla) and arguably overwhelming evidence is contained in the administrative record to support Lincoln's decision to deny Sewell's claim for AD&D

---

[32] Footnote 5 cite: Anne Garrison, BS, Kara Clifford, BA, Stacy F. Gleason, MPH, Carlos G. Tun, MD, Robert Brown, MD, and Eric Garshick, MD. MOH *Alcohol Use Associated With Cervical Spinal Cord Injury J Spinal Cord Med. 2004*; 27(2): 111–115. Lincoln/Sewell 643 (D.E. 21-4 Page 170).
[33] Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 760 (D.E. 21-5, Page 48).
[34] Ex. 3, Administrative Record, Lincoln/Sewell 497 (D.E. 21-4, Page 24).
[35] *George v. Reliance Standard Life Ins. Co.,* 776 F.3d at 354.

benefits from the Policy. Accordingly, it is clear that Lincoln did not abuse its discretion, and the Court must uphold its decision.

The documents in the Administrative Record that were submitted by Sewell fail to either rebut the presumption that Sewell's alcohol use contributed to the incident or cast doubt on the substantial evidence relied upon by Lincoln. There are two primary categories of documentation submitted by Sewell to Lincoln that were asserted to support Sewell's claim for benefits. The first category is a number of affidavits from Sewell and others describing the events on the day of the incident.[36] These affidavits were all signed in April, May, July, and August of 2023, which was 20-24 months after the incident on August 28, 2021. This long span of time casts doubts on the accuracy of the statements made in the affidavits regarding events that occurred almost two years before the affidavits were signed. Additionally, as Dr. Swotinsky noted, the language in many of these affidavits is redundant, indicating that one person was their primary author,[37] which further damages the credibility of the affidavits. Dr. Swotinsky also points out that the statements in the affidavits that Sewell was not intoxicated are controverted by Sewell's documented BAC level and the ER physician's opinion that Sewell had presented with "alcohol intoxication."[38] Moreover, the medical records state that Sewell was diagnosed with alcohol abuse with intoxication (unspecified) on August 28, 2021.[39] Finally, Dr. Swotinsky opined that he viewed the medical records from the day of the incident as more reliable than the affidavits because they were contemporaneous, came from independent sources not subject to biased recall, and came from medical professionals who were better qualified than the affiants at recognizing

---

[36] Ex. 3, Administrative Record, Lincoln/Sewell 434, 451, 459-461, and 181-192 (D.E. 21-3, Pages 380, 397, 405-407, and 127-138).
[37] Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 759 (D.E. 21-5, Page 47).
[38] Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 759 (D.E. 21-5, Page 47).
[39] Ex. 3, Administrative Record, Lincoln/Sewell 232 and 601 (D.E. 21-3, Page 178, D.E. 21-4, Page 128).

and documenting Sewell's intoxication.[40]  While these affidavits were fully considered by the reviewing physicians and by Lincoln, reasonably, they were not deemed to effectively controvert the BAC and the medical records.[41]

The second category of documentation submitted by Sewell are three reports by Dr. Arnold.  The first of these is dated April 28, 2023,[42] and this report is rebutted by Dr. Geimer's June 7, 2023, and September 7, 2023, reports.[43]  The second report by Dr. Arnold is dated November 17, 2023,[44] and it is rebutted by Dr. Swotinsky's June 3, 2024, report.[45] Dr. Arnold's third and final report is dated June 24, 2024,[46] and Dr. Swotinsky's July 22, 2024, report[47] was issued in rebuttal.

Dr. Arnold makes two primary arguments in these reports – both of which are deeply flawed and well refuted by Dr. Geimer and Dr. Swotinsky.  The first argument is that Dr. Arnold views the affidavits as firm support that Sewell's incident was not the result of his alcohol use. He states that the affidavits contain "undisputed facts" that Sewell was not intoxicated,[48] which is wholly incorrect.  As explained by Dr. Swotinsky and described above, the affidavits are far less reliable than the medical records, which directly dispute the affidavits.

The second argument Dr. Arnold makes is that the production of lactic acid in Sewell's body led to a false BAC reading.  However, Dr. Arnold never states the degree to which the lactic acid would affect the reading.  Additionally, there were no test results for either lactic acid

---

[40] Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 759-760 (D.E. 21-5, Pages 47-48).
[41] *Rittinger*, 914 F.3d at 958 (administrator did not abuse its discretion in crediting after-the-fact, self-serving affidavits).
[42] Ex. 3, Administrative Record, Lincoln/Sewell 520-525 (D.E. 21-4, Pages 47-52).
[43] Ex. 3, Administrative Record, Lincoln/Sewell 137-144 and 497-502 (D.E. 21-3 Pages 83-90, D.E. 21-4, Pages 24-29).
[44] Ex. 3, Administrative Record, Lincoln/Sewell 66-70 (D.E. 21-3, Pages 23-27).
[45] Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 826-831 (D.E. 21-5, Pages 114-119).
[46] Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 762-767 (D.E. 21-5, Pages 50-55).
[47] Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 756-761 (D.E. 21-5, Pages 44-49).
[48] Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 762-767 (D.E. 21-5, Pages 50-55).

or lactate dehydrogenase in Sewell's medical records, so whether these were present in Sewell's blood is unknown.[49]

Moreover, as Dr. Swotinsky noted, "The medical/scientific literature that Dr. Arnold cites to support his claim describe this phenomenon as contributing at most low levels of alcohol, about ¼ - ⅓ of the claimant's level.[50] However, even if, for the sake of argument (but not contained in the administrative record), it was shown that lactic acid was present and the accurate BAC was half of what was measured (.222% X 50%), the resulting BAC would be .111%, which would still well exceed the State of Texas threshold for legal intoxication.

Nevertheless, Dr. Arnold never states any opinion about the degree of error that might be expected in the BAC due to the presence of lactic acid. In fact, Dr. Arnold actually agrees with Dr. Swotinsky that the degree of error caused by the lactic acid, if any, in the BAC cannot be determined. Dr. Arnold states, "The fact is that there is no linear relationship for this interference so no estimations can be made. The result is spurious and therefore unreliable."[51]

Moreover, Dr. Arnold's theory regarding the connection between lactic acid and the BAC is just that – a theory. While case reports cited by Dr. Arnold each involved 2 or 3 patients, some of whom had died before the BAC testing was conducted, the study cited by Dr. Swotinsky involved 37 live patients with confirmed elevated lactate and lactate dehydrogenase levels.[52] This 2018 study concluded, "This data does not support the contention that an elevated LDH and lactate can yield a false positive serum ethanol result as run by enzymatic ethanol assay in live patients presenting to the emergency department.iv"[53] Additionally, Dr. Swotinsky noted that a

---

[49] Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 827 (D.E. 21-5, Page 115).
[50] Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 758 (D.E. 21-5, Page 46).
[51] Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 765 (D.E. 21-5, Page 53).
[52] Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 758 (D.E. 21-5, Page 46).
[53] Footnote iv cite: Nacca N, Hodgman M, Lao K, et al. *Can elevated lactate and LDH produce a false-positive enzymatic ethanol result in live patients presenting to the emergency department*? Clin Toxicol (Phila). 2018;56:189-92. Lincoln/Sewell 761 (D.E. 21-5, Page 49).

critique of one of the case reports referenced by Dr. Arnold states that studies in general have

found little evidence to support this phenomenon in live patients.v[54]

_____

As Dr. Swotinsky stated in his final report,

The claimant's alcohol level corresponded with diminished judgment, increased self confidence, and decreased inhibition.  Misjudgments of water death and reckless behavior have been cited as common factors in diving-related cervical spine injuries.ix[55]  The claimant sustained his cervical spine injury when intoxicated by alcohol and diving into shallow water.  The evidence demonstrates, consistent with published data about risk, that this claimant's alcohol use was a contributing factor in his accident.[56]

Additionally, Sewell faults Lincoln for relying on the three separate opinions of

Dr. Millstein, Dr. Geimer, and Dr. Swotinsky over the opinions of Dr. Arnold in the reports that

Sewell submitted.  However, "the job of weighing valid, conflicting professional medical

opinions is not the job of the courts; that job has been given to the administrators of ERISA

plans. *Corry*, 499 F.3d at 401, *citing, Gothard v. Metro. Life Ins. Co.*, 491 F.3d 246, 2007 WL

1830736, at *3 (5th Cir. 2007) ("[P]lan fiduciaries are allowed to adopt one of two competing

medical views, a rule which resolves this appeal in favor of [the administrator]. … [The

administrator's] decision may not be correct, but we cannot say that it was arbitrary.").

"Although the district court may disagree . . ., the Plan Administrator, not the district court, is in

the best position to balance conflicting evidence."  *Holland v. Int'l Paper Co. Ret. Plan,* 576

F.3d 240, 250 (5th Cir. 2009).  Lincoln considered Dr. Arnold's opinions, as reflected in its

letters regarding the claim decision and the opinions of the reviewing physicians.  However,

[54]  Footnote v cite:  Winek C, Whaba W. *A response to "serum-ethanol determination: comparison of lactate and lactate dehydrogenase interference in three enzymatic assays."* J Anal Toxicol. 1996;20:211. Lincoln/Sewell 761 (D.E. 21-5, Page 49).

[55]  Footnote ix cite:  Blanksby B, Wearne F, Elliott B, Blitrich J. *Aetiology and occurrence of diving injuries. Sports Med. 1997;23:228-46.* Lincoln/Sewell 761 (D.E. 21-5, Page 49).

[56]  Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 761 (D.E. 21-5, Page 49).

Lincoln "was not required to give [Dr. Arnold's] opinions determinative weight." *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 233 (5th Cir. 2004).

Accordingly, Lincoln properly applied the Policy exclusion, and most certainly did not abuse its discretion based on the administrative record, as abundant evidence supported Lincoln's decision. Therefore, Sewell should not prevail on his claim for recovery of AD&D benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), and the Court should uphold Lincoln's decision and dismiss Sewell's claim for recovery of AD&D benefits from Lincoln.

## II.
## CONCLUSION AND PRAYER

It is clear that, based on the administrative record, Lincoln's decision to deny Sewell's claim for AD&D benefits from the Life Plan under the Policy was not an abuse of discretion and was actually the correct decision. Substantial evidence in the administrative record establishes that Sewell's incident and resulting quadriplegia was contributed to or caused by the presence of alcohol in Sewell's blood, and Sewell failed to rebut the presumption created by the Policy exclusion or show that Lincoln abused its discretion in making the decision that no AD&D benefits were payable to Sewell under the Policy. Therefore, Lincoln requests that the Court enter a take-nothing judgment on Sewell's claims in this action, deny Plaintiff's Cross-Motion for Summary Judgment, grant Lincoln's Motion for Summary Judgment, and award Lincoln its attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g).

Dated this 16th day of October 2024.

Respectfully submitted,

By:  /s/ Iwana Rademaekers
    Iwana Rademaekers, Attorney in Charge
    State Bar of Texas No. 16452560
    S.D. of Texas No. 22781
    LAW OFFICES OF IWANA RADEMAEKERS, P.C.
    17304 Preston Road, Suite 800
    Dallas, Texas 75252
    Main:  (214) 579-9319
    Fax:  (469) 444-6456
    Email:  iwana@rademaekerslaw.com

ATTORNEYS FOR DEFENDANT THE
LINCOLN NATIONAL LIFE INSURANCE
COMPANY

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing pleading was electronically filed with the clerk for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court, and the electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means, as follows:

J. PRICE McNAMARA
Email:  price@jpricemcnamara.com

October 16, 2024              /s/ Iwana Rademaekers
Date                           Iwana Rademaekers