**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **TIMOTHY SEWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Case No. 2:23-cv-00317** |
| **THE LINCOLN NATIONAL LIFE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

By:   /s/ Iwana Rademaekers
      Iwana Rademaekers, Attorney in Charge
      State Bar of Texas No. 16452560
      S.D. of Texas No. 22781
      LAW OFFICES OF IWANA RADEMAEKERS, P.C.
      17304 Preston Road, Suite 800
      Dallas, Texas 75252
      Main:  (214) 579-9319
      Fax:  (469) 444-6456
      Email:  iwana@rademaekerslaw.com

ATTORNEYS FOR DEFENDANT THE
LINCOLN NATIONAL LIFE INSURANCE
COMPANY

# TABLE OF CONTENTS

I. Lincoln's Reply ...................................................................................................................1

    A. The Heart of the Dispute – Lincoln's Decision Was Correct Based on the Policy and the Administrative Record...................................................................................................1

    B. Sewell Grossly Mischaracterizes Dr. Swotinsky's and Dr. Millstein's Statements Regarding the Cited Medical Literature. ...............................................................................2

    C. The Attachment of the Studies Cited by Dr. Swotinsky and Dr. Millstein to Sewell's Brief and the Unqualified Opinions Regarding those Studies Expressed by Sewell in his Brief Are an Improper Attempt to Expand the Administrative Record...........................5

    D. Sewell Ignores Dr. Swotinsky's Credentials. ....................................................................5

    E. Sewell Fails to Rebut the Policy Presumption Raised by the High BAC. ...........................6

    F. The Affidavits Were Considered and Rightly Found Not to Be Persuasive. .......................7

    G. Ellis Is Properly Characterized as Holding that the Evidence to Support the Decision Should Be the Court's Focus. ...............................................................................................8

    H. Cases Cited by Sewell Are Not Analogous to the Facts in this Action.................................8

    I. Cases Cited by Lincoln Regarding Intoxication Are Analogous to the Facts in this Action. ...............................................................................................................................10

    J. Lincoln Committed No Procedural Errors; However, if such an Error Existed, the Appropriate Remedy Would be Remand to Lincoln. .........................................................11

    K. Affidavit Regarding Negating Bias and Ensuring Claim Decision Accuracy Is Appropriate.......................................................................................................................15

    L. Sewell Is Simply Wrong About Lincoln's Characterization of the Record. ......................15

    M. Sewell Has Failed to Carry his Burden to Show that Lincoln's Denial of Sewell's Claim for AD&D Benefits Was an "Abuse of Discretion."................................................15

II. CONCLUSION AND PRAYER................................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Burtch v. Hartford Life & Accident Ins. Co.*, 314 Fed. Appx. 750, 753 n.3 (5th Cir. 2009) ............6

*Clark v. Cingular Wireless Bargained*, CA No. 7:09-CV-177-O, 2010 U.S. Dist. LEXIS 163580 *11 (N.D. Tex. Dec. 23, 2010) ...................................................................................12

*Colvin v. 88 Bd.*, CA No. SA 17-CV-974-XR, 2018 U.S. Dist. LEXIS 61818 *17-18 (W.D. Tex. Apr. 11, 2018)...............................................................................................12

*Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83, 115 S. Ct. 1223, 131 L. Ed. 2d 94 (1995)..........................................................................................................................7

*Davis v. Aetna Life Ins. Co.*, 699 Fed. Appx. 287, 294, 295 (5th Cir. 2017)....................................6

*Dutka v. AIG Life Ins. Co.*, 573 F.3d 210, 214 (5th Cir. June 24, 2009) .......................................11

*Dwyer v. United Healthcare Insurance Company*, 2024 U.S. App. LEXIS 23866, *8 (5th Cir. Sept. 19, 2024) ...................................................................................................6, 10

*Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004).................................8

*Estate of Bratton v. Nat'l Union Fire Ins. Co.*, 215 F.3d 516, 521 (5th Cir. 2000) .........................5

*Firman v. Becon Constr. Co.*, 789 F. Supp. 2d 732, (S.D. Tex., 2011)..........................................8

*Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 544 (5th Cir. 2012)............................................8

*Green v. Life Ins. Co.*, 754 F.3d 324 (5th Cir. 2014)......................................................................9

*Hillebrandt v. Unum Life Ins. Co. of Am.*, CA No. 16-cv-844, 2017 U.S. Dist. LEXIS 219303 *12-13 .............................................................................................................12

*Jones v. Metro. Life Ins. Co.*, CA No. H-12-1955, 2013 U.S. Dist. LEXIS 75397 *16 (S.D. Tex. May 29, 2013) .............................................................................................12

*Jurasin v. GHS Prop. & Cas. Ins. Co.*, 463 Fed. Appx. 289, 293 (5th Cir. 2012). .........................8

*Lacy v. Fulbright & Jaworski*, 405 F.3d 254, 256-57 & n. 5 (5th Cir. 2005)..................................11

*Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 157 (5th Cir. 2009)................................14

*McCann v. Unum Provident*, CA No. 11-3251 (MLC), 2013 U.S. Dist. LEXIS 147269, *13 (D. N.J. October 11, 2013)...............................................................................11

*Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) ..........................................................................9

*Robinson v. Aetna Life Ins.*, 443 F.3d 389, 393 (5th Cir. 2006) ......................................................11

*Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465, 471 (5th Cir. 2010) ...................9

*Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 510 (5th Cir. 2013)...........................................9

*Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 300 (5th Cir. 1999).........................................11

*Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 540
  (5th Cir. 2007)..............................................................................................................................14

**STATUTES**

29 C.F.R. § 2560.503-1(h)(3) .............................................................................................................6

29 C.F.R. § 2560.503-1(h)(3) and (4)...............................................................................................13

29 U.S.C. § 1132(g) ..........................................................................................................................17

TIMOTHY SEWELL,      )
         )
      **Plaintiff,**    )
         )
**vs.**         )
         )      **Case No. 2:23-cv-00317**
**THE LINCOLN NATIONAL LIFE**  )
**INSURANCE COMPANY,**   )
         )
      **Defendant.**   )

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant The Lincoln National Life Insurance Company ("Lincoln") files this Reply in Support of its Motion for Summary Judgment,[1] and also in support of its Response to Plaintiff's Motion for Summary Judgment. This Reply is supported by Lincoln's Motion for Summary Judgment and Brief in Support (D.E. 24, 24-2, and 24-3), Lincoln's Response to Plaintiff's Cross Motion for Summary Judgment (D.E. 27), and the administrative record, the Policy, and Lincoln's final appeal decision, which are all attached to Defendant's Amended Response to ERISA Case Order (D.E. 21-1, 21-2, 21-3, 21-4, and 21-5) filed by Lincoln on August 8, 2024. All of these documents are fully incorporated by reference into this Reply.

## I.
## LINCOLN'S REPLY

**A.**    **The Heart of the Dispute – Lincoln's Decision Was Correct Based on the Policy and the Administrative Record.**

Armed only with identical, biased affidavits prepared years after the incident and Dr. Arnold's unproven theory that has no factual backing even if his theory is correct, Sewell

---

[1]   Exhibits 1 through 4 referenced throughout this Motion and Brief refer to the Exhibits attached to Defendant's Amended Response to ERISA Case Order (Dkt 21), specifically, Ex. 1 at D.E. 21-1, Ex. 2 at D.E. 21-2, Ex. 3 at D.E. 21-3 and D.E. 21-4, and Ex. 4 at D.E. 21-5.

cannot avoid the evidence in the administrative record of a documented .222% BAC, the studies and experts' statements about the effects of this BAC on Sewell's judgment and physical coordination, the studies and experts' statements that accurately reflect that alcohol is commonly involved in this type of incident, as well as widely-known understandings regarding water safety and basic common sense.

The Policy states that "the presence of alcohol in the Covered Person's blood, . . . raises a presumption that the Covered Person was under the influence of alcohol and contributed to the accident." Clearly, the Policy presumption has been raised by the .222% BAC, and the two categories of evidence Sewell points to do not rebut the presumption. However, even if such weak evidence could rebut the presumption, the known effects of this high BAC on Sewell's judgment and physical coordination, the well-established connection between alcohol and this type of accident, Sewell's admission that he dove into murky water of an unknown depth, and common knowledge regarding water safety means Sewell not only failed to meet his burden under the law for the Court to award him benefits, but that Lincoln made the correct decision.

In his Response, Sewell makes 35 pages of arguments to distract from the heart of this matter and Lincoln's correct decision, but none of them hits any target, as explained below.

### B. Sewell Grossly Mischaracterizes Dr. Swotinsky's and Dr. Millstein's Statements Regarding the Cited Medical Literature.

The argument in Sewell's brief regarding Dr. Swotinsky's report is categorically untrue. Table 3 of the cited study[2] plainly states that the OR (outcome ratio) of the likelihood of alcohol being involved in a diving accident is 4.31, with a 95% confidence interval. This means that statistical analysis states that there is a 4.31% increase in risk of a cervical spine injury vs. non-cervical spine injury, and further, that 78% of the cervical spine injuries are attributable to

---

[2]    Sewell's Brief in Opposition to Lincoln's Motion for Summary Judgment, D.E. 26-1, p. 7.

alcohol use.  The 78% is a calculation from page 4 of Dr. Swotinsky's July 27, 2024, report.  The equation actually should have read: (4.31 – 1) / 4.31 = 0.77.  This means 77% (rather than 78%) of the increased rate of cervical spine cord injuries in divers who used alcohol can be attributed to alcohol use (given the background, relative rate in nondrinkers of "1").

Additionally, Sewell complains about the use of self-reporting of alcohol use in the study, but the study addresses that issue and explains the validity measures taken.[3]  Also, the study states that if anything, alcohol use was being underreported, which may mean the OR and percentages are even higher than was calculated.[4]

With regard to Sewell's complaints about Dr. Millstein's report, Sewell attempts to distinguish the incident at issue here from the dangers of "idiotic diving" (Sewell's quote[5]).  This is exactly the point that Dr. Millstein is making:  alcohol use and the resulting reduced judgment means that individuals are more likely to engage in risky activities such as diving, not jumping, directly into murky water of an unknown depth.

It should be noted, as explained by the *Borius* article,[6] the citation and 38-49% statistic was taken from six previously published studies referenced in the *Borius* article, not from one single series, including the following*:*

• *Badman BL, Rechtine GR.* Spinal injury considerations in the competitive diver: a case report and review of the literature. Spine J. 2004; 4:584-590.

• *Bailes VM, Herman JM, Quigley MR, Cerullo LJ, Meyer PR, Jr.* Diving injuries of the cervical spine. Surg Neurol. 1990; 34:155-158.

---

3    Sewell's Brief in Opposition to Lincoln's Motion for Summary Judgment, D.E. 26-1, Page 8.
4    Sewell's Brief in Opposition to Lincoln's Motion for Summary Judgment, D.E. 26-1, Page 8.
5    Sewell's Brief in Opposition to Lincoln's Motion for Summary Judgment, D.E. 26, Page 17.
6    Footnote 4 cite:  Pierre-Yves Borius, Ismail Gouader, Philippe Bousquet, Louisa Draper, and Franck Emmanuel Roux. *Cervical spine injuries resulting from diving accidents in swimming pools: outcome of 34 patients* Eur Spine J. 2010 Apr; 19(4): 552–557. Lincoln/Sewell 643 (D.E. 21-4 Page 170).

• *Devivo MJ, Sekar P.* Prevention of spinal cord injuries that occur in swimming pools. Spinal Cord. 1997; 35:509-515.

• *Herman JM, Sonntag VK.* Diving accidents, mechanism of injury and treatment of the patient. Crit. Care Nurs Clin North Am. 1991; 3:331-337.

• *Kluger Y. Jarosz D. Paul DB, Townsend RN. Diamond DL.* Diving injuries: a preventable catastrophe. J. Trauma 1994; 36:349-351

• *Korres DS, Benetos IS. Et al.* Diving injuries of the cervical spine in amateur divers. Spine J. 2006; 6:44-49.

Also, the *Borius* article reviews other series that found a relationship between alcohol use and spinal cord injuries in a significant number of patients. Finally, the sixth line of the abstract from the *Borius* article indicates these 34 cases were taken from a neurosurgical center not one rehabilitation facility. In the Patient Population section under Clinical Materials and Methods the authors explain that this was a retrospective study of all spine injuries admitted to their institution and that the 34 injuries resulting from diving accidents were taken from review of 1,362 patients admitted to the neurosurgery department. The study did cite statistics regarding the mean duration of treatment in a center of rehabilitation. It is apparent that the critique of Dr. Millstein's report contained in Sewell's brief does not include a working understanding of medical literature.

Moreover, as stated by Dr. Millstein, that 38-49% of all spinal cord injuries of all spinal cord injuries resulting from diving into shallow water are connected to alcohol use is a telling statistic. Given that only a very small percentage of the population could be expected to be under the influence of alcohol at any one time, 38-49% of the accidents coming from that small population of people who are under the influence is quite significant. Of all the population of

people diving into water at any given time, only a small percentage of them would be expected to be intoxicated, yet the intoxicated group makes up 38-49% of all of the people who suffer a cervical injury as a result.

C. **The Attachment of the Studies Cited by Dr. Swotinsky and Dr. Millstein to Sewell's Brief and the Unqualified Opinions Regarding those Studies Expressed by Sewell in his Brief Are an Improper Attempt to Expand the Administrative Record.**

When assessing factual questions in ERISA disputes, the Fifth Circuit has held that the Court is limited to review of the administrative record. *Estate of Bratton v. Nat'l Union Fire Ins. Co.*, 215 F.3d 516, 521 (5th Cir. 2000). However, the studies attached to Sewell's brief and relied upon to criticize Dr. Swotinsky's and Dr. Millstein's arguments are not in the final version of the administrative record.[7] Moreover, not only is the attachment of the studies an improper attempt to expand the administrative record, so too is the Sewell brief writer's interpretation of those studies, despite not having stated any qualifications to make such interpretations. Of course, the writer of this brief would agree that she is no more qualified to weigh in on the interpretation of the medical studies than is the writer of Sewell's brief. However, Sewell's argument must be answered, and Section C herein provides ample explanation regarding the error of Sewell's interpretations. However, as stated above, the studies and the argument should be disregarded by the Court, as they are impermissible attempts to add to the administrative record during the briefing of this case.

D. **Sewell Ignores Dr. Swotinsky's Credentials.**

Sewell again describes Lincoln's physicians as "non-toxicologists," ignoring Dr. Swotinsky credentials. Dr. Swotinsky is eminently qualified to opine regarding the matters

---

[7]   Ex. 3, Administrative Record (D.E. 21-3 and D.E. 21-4); Ex. 4, Administrative Record Supplementation (D.E. 21-5).

at issue with Sewell's claim as he has extensive experience and training in substance testing,[8] having published articles and having held many positions involving the review of substance testing programs.[9]   Additionally, Dr. Swotinsky has authored a textbook for physicians who provide workplace drug and alcohol testing services.[10]   Finally, he also serves as Assistant Professor for the University of Massachusetts Medical School.[11]

Lincoln did not "ignore or mischaracterize" the recommendations of Dr. Arnold.  Lincoln placed more weight on the conclusions of Dr. Millstein, Dr. Geimer (two reports), and Dr. Swotinsky (two reports), who analyzed the medical records and Dr. Arnold's reports, and Lincoln's reliance on their own experts is "clearly permissible."  *Davis v. Aetna Life Ins. Co.*, 699 Fed. Appx. 287, 294 (5th Cir. 2017).   Moreover, in *Davis*, the Fifth Circuit found an administrator favoring the opinions of the occupational medicine specialists[12] was considered consultation with physicians with "appropriate training and experience in the field of medicine involved in the medical judgment" and was not an abuse of discretion.  29 C.F.R. § 2560.503-1(h)(3).   *Davis*, 699 Fed. Appx. at 295.   The Court stated it was not necessary for the administrator to retain a rheumatologist.  Likewise, in *Burch v. Hartford Life & Accident Ins. Co.*, 314 Fed. Appx. 750, 753 n.3 (5th Cir. 2009), the administrator did not abuse its discretion in relying on the opinion of an internist who did not have special training in pulmonology in providing opinions regarding a claimant had emphysema.

### E.       Sewell Fails to Rebut the Policy Presumption Raised by the High BAC.

When making a substantive benefits determination, the text of the plan is the alpha and the omega. *Dwyer v. United Healthcare Insurance Company*, 2024 U.S. App. LEXIS 23866, *8

---

[8]   Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 805-815 (D.E. 21-5, Pages 93-103).
[9]   Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 808-815 (D.E. 21-5, Pages 96-103).
[10]   Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 809 (D.E. 21-5, Page 97).
[11]   Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 808 (D.E. 21-5, Page 96).
[12]   Ex. 3, Administrative Record, Lincoln/Sewell 502 and 643 (D.E. 21-4, Pages 29 and 170)

(5th Cir. Sept. 19, 2024) (copy attached), citing *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83, 115 S. Ct. 1223, 131 L. Ed. 2d 94 (1995).  The Policy language that is relevant to Sewell's claim is unique, as a BAC exceeding the relevant State's legal limit (.222% vs. Texas .08%) raises a presumption that alcohol contributed to or caused the accident.[13]  This initial presumption is similar to the policies that include the simple exclusion that benefits are not payable if the accident happens while intoxicated.  Sewell completely ignores this Policy language.

The language in this Policy means that it is presumed the exclusion will be applied unless the contents of the administrative record provide evidence to effectively rebut the presumption. When this presumption is coupled with the applicable standard of review in this case, it means that Lincoln's decision must be upheld by the Court unless it finds that Lincoln abused its discretion in determining that the presumption was not rebutted by Sewell, effectively adding another hurdle to Sewell's path to recovery of benefits in this Court.  However, as Lincoln has repeatedly stated in its briefs, Sewell's evidence does not rebut the presumption.

  **F.**  <u>**The Affidavits Were Considered and Rightly Found Not to Be Persuasive.**</u>

Sewell continues to argue that Lincoln failed to consider the affidavits of Sewell and others[14] as evidence to support that Sewell was not intoxicated, despite the .222% BAC.  Many of these affidavits contained detailed information about how much Sewell drank, how he entered the water, the area in which the boat was anchored, and whether Sewell was intoxicated; but the language used to describe these issues is virtually identical, indicating that these affidavits were clearly prepared by the same person, intending to create a seamless story.  Moreover, that such details were remembered by persons signing affidavits in May 2023 regarding an incident that

---

[13] Ex. 1, Policy, Lincoln/Sewell 033 (D.E. 21-1, Page 33)
[14] Ex. 3, Administrative Record, Lincoln/Sewell 449, 454, and 472-474 (D.E. 21-3, Pages 395, 400, and 418-419, D.E. 21-4, Page 1).

occurred in August 2021 severely hampers the credibility of the affidavits and reasonably reflect bias on the part of persons who, by the time the affidavits were signed, knew that the affidavits were requested to assist Sewell in obtaining the benefits that are at issue in this lawsuit. Lincoln considered the affidavits, and reasonably found them unpersuasive to rebut the .222% BAC. However, the affidavits did provide additional evidence to support the denial, as the surrounding water was described as murky, people in the surrounding water as shallow as chest deep, and Sewell did not test the depth of the water before diving. Therefore, a decision to dive into this unknown water demonstrates diminished judgment such that would be caused by such a high BAC.

**G.** **Ellis Is Properly Characterized as Holding that the Evidence to Support the Decision Should Be the Court's Focus.**

*Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004) states, "If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail," which accurately means the Court examines the evidence that supports the decision. Sewell does not prevail if (which is disputed) "he has supported his claim with substantial evidence, or even with a preponderance." *Id.* As the Fifth Circuit stated, "We do not weigh the evidence on our review, but only determine whether there is some evidence to support the administrator's decision. *Jurasin v. GHS Prop. & Cas. Ins. Co.*, 463 Fed. Appx. 289, 293 (5th Cir. 2012). Accordingly, despite Sewell's statement to the contrary, Courts have clearly found that the evidence that supports the administrator's decision is the focus in the Court's inquiry.

**H.** **Cases Cited by Sewell Are Not Analogous to the Facts in this Action.**

The cases cited by Sewell are easily distinguishable from the case before the Court. First, *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 544 (5th Cir. 2012), upholding and adopting *Firman v. Becon Constr. Co.*, 789 F. Supp. 2d 732, (S.D. Tex., 2011) found that an administrator

could not find that intoxication negated any "accident" under the policy, even though the relevant policy did not contain that language. Sewell's claim is governed by a Policy that contains an exclusion that a presumption is raised by the presence of alcohol beyond the legal limit that such alcohol contributed to the cause of the accident. Whether an "accident" occurred is not in question.

Next, *Green v. Life Ins. Co.*, 754 F.3d 324 (5th Cir. 2014) analyzed the relevant policy's exclusion for operating a vehicle while intoxicated, which the Court found did not include a boat. This scenario is wholly irrelevant to Sewell's claim.

In *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 510 (5th Cir. 2013), the Fifth Circuit held that "procedural unreasonableness" should not be treated as "anything more than a component of [the] analysis of [the administrator's] conflict." Of course, there is no evidence of procedural unreasonableness with regard to Lincoln's processing of Sewell's claim (see, Section J herein). The Fifth Circuit also reiterated its position that an administrator is not under a duty to "reasonably investigate" a claim (*Id*. at 511) and stated it declined to "substitute our judgment for that of the plan administrator." (*Id*. at 513.) However, in this instance, Lincoln carefully considered all the evidence, including the affidavits and Dr. Arnold's reports, and there is simply no evidence of procedural unreasonableness. Moreover, this Court should not substitute its judgment for Lincoln's with regard to Sewell's claim.

The holding in *Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465, 471 (5th Cir. 2010) was that the administrator's failure to consider the Social Security Administration's award of disability benefits was "procedural unreasonableness." Of course, this holding is wholly consistent with the U.S. Supreme Court's decision in *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), but fully irrelevant to Sewell's claim.

Finally, the Fifth Circuit's recent holding in *Dwyer*, pertained to the denial of hospital benefits for anorexia nervosa because the hospitalization was deemed unnecessary and the denial letter failed to specify the reasons for the adverse determination letter. In this situation, the relevant policy included a definition of "medically necessary" that was interpreted and applied by the court. Clearly, Dwyer's claim is an orange, and Sewell's claim is an apple – they are not analogous. Moreover, the situation is not similar in that the initial denial letter in Sewell was not deficient (see Section J herein). Moreover, the administrator was faulted for failing to discuss any of the evidence in the record that might support a finding that hospitalization was medically necessary as it explained the reasons for the denial. Also of note is that in *Dwyer*, the Fifth Circuit stated that the administrator was not required to defer to the treating physician opinions, but those must be addressed, which is the core of meaningful dialogue. That dialogue clearly occurred, as Lincoln's letter and its physicians' reports provided a point by point rebuttal to the documentation submitted by Sewell, and Dr. Geimer's and Dr. Swotinsky's first reports were sent to Sewell's counsel for review and comment.[15]

I.  **Cases Cited by Lincoln Regarding Intoxication Are Analogous to the Facts in this Action.**

Given Sewell's very high level of intoxication, it is reasonable to draw the inference that Sewell's intoxication resulted in his decision to dive (not jump) into murky water of an unknown depth. Likewise, the errors of judgment described in the cases Lincoln cited in its original Brief, such as driving into the center lane and lighting a firework in one's hand, were also reasonable to draw the inference that such errors were due to intoxication. In other words, Sewell's decision to dive (not jump) into murky water without checking the depth of the water is analogous to

---

[15]    Ex. 3, Administrative Record, Lincoln/Sewell 480-481 (D.E. 21-4, Pages 7 and 8); Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 798 and 818-819 (D.E. 21-5, Pages 86 and 106-107).

crossing into a center lane while driving – both of these scenarios support an inference that the actions were due to the measured BAC levels. This is what is meant by the statement in *Dutka v. AIG Life Ins. Co.*, 573 F.3d 210, 214 (5th Cir. June 24, 2009) that such evidence will normally be circumstantial. It is not possible to travel back in time and climb inside someone's mental and physical state to determine if an incident was the result of intoxication. Determining whether an incident was due to intoxication involves an examination of the circumstances (i.e., circumstantial evidence). Moreover, Sewell's comment that there were no witnesses in *Dutka* is irrelevant, as the affidavits by the witnesses submitted by Sewell were reasonably found not to be credible by Lincoln.

**J.** **Lincoln Committed No Procedural Errors; However, if such an Error Existed, the Appropriate Remedy Would be Remand to Lincoln.**

Challenges to an administrator's compliance with ERISA procedures are evaluated under the substantial compliance standard. *Lacy v. Fulbright & Jaworski*, 405 F.3d 254, 256-57 & n. 5 (5th Cir. 2005). "Technical noncompliance with ERISA procedures will be excused so long as the purpose of section 1133 has been fulfilled." *Robinson v. Aetna Life Ins.*, 443 F.3d 389, 393 (5th Cir. 2006).

As Lincoln explained in its previous Briefs to the Court, the dicta in *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 300 (5th Cir. 1999) that any documentation submitted to the administrator before suit is filed will be considered part of the administrative record should be limited to the context of *Vega*. No appeal was required by the plan or submitted by the claimant in that case. Moreover, "The Fifth Circuit case of *Vega* has been rejected by other jurisdictions and has indeed been questioned by the Fifth Circuit itself." *McCann v. Unum Provident*, CA No. 11-3251 (MLC), 2013 U.S. Dist. LEXIS 147269, *13 (D. N.J. October 11, 2013) (copy attached to Lincoln's Response Brief).

It must be remembered that claims and appeals personnel are not attorneys. While they obviously must receive extensive training, uniform processing is the goal, and claims are analyzed the same regardless of geographic location. These personnel do not consider the propensity of a particular jurisdiction in rendering claims decisions. Accordingly, once the administrative record was to be compiled in this case in connection with this litigation, and once Sewell's counsel stated that he took the position that the report submitted after the appeal uphold letter should be included in the record, Lincoln took the principled approach and suggested a re-review of Sewell's claim. Although Lincoln did not agree with Sewell's counsel's position that Dr. Arnold's first report should be considered part of the administrative record, Lincoln recognized that a possible conclusion of this litigation would result in a remand to Lincoln to consider the post-appeal submission. *Jones v. Metro. Life Ins. Co.*, CA No. H-12-1955, 2013 U.S. Dist. LEXIS 75397 *16 (S.D. Tex. May 29, 2013) ("A primary goal of remand is to avoid judicial resolution of purely administrative benefits determinations."); *Colvin v. 88 Bd.*, CA No. SA 17-CV-974-XR, 2018 U.S. Dist. LEXIS 61818 *17-18 (W.D. Tex. Apr. 11, 2018) ("It would be improper for this Court to evaluate the information without the plan administrator first having the opportunity to do so."); *Hillebrandt v. Unum Life Ins. Co. of Am.*, CA No. 16-cv-844, 2017 U.S. Dist. LEXIS 219303 *12-13; *Clark v. Cingular Wireless Bargained*, CA No. 7:09-CV-177-O, 2010 U.S. Dist. LEXIS 163580 *11 (N.D. Tex. Dec. 23, 2010). (copies attached to Lincoln's Response Brief).

However, Sewell refused to agree to the re-review and opposed Lincoln's motion to extend the briefing deadline to allow for the additional consideration of Sewell's claim to take place. The Court originally set a very tight timetable of 20 days for the new review with the amended record to be filed on June 10, 2024, stating "This extension is being granted in an effort

to resolve a dispute as to what is properly included in the administrative record."[16] Sewell then requested an extension of that timetable, which Lincoln did not oppose, and the Court then ordered Lincoln to file the amended record by August 8, 2024. Sewell now complains that Lincoln should have sent Dr. Swotinsky's second report[17] dated July 22, 2024, to Sewell's counsel before Lincoln reviewed all of the documentation and issued its final decision on August 3, 2024.[18] Four days after that decision was issued, counsel for the parties exchanged emails regarding the amended record, and Sewell's counsel said the record looked "ok" to him. Sewell's counsel did not suggest that another extension be sought or indicate that the record was anything other than complete at that point.

Additionally, the claims procedure regulation that requires that new evidence be provided only applies to group health and group disability claims, and not to claims under group life coverage. 29 C.F.R. § 2560.503-1(h)(3) and (4). Nevertheless, Lincoln fully complied with (h)(1) and (2) of this section in that the administrative record reflects that Lincoln maintains a reasonable procedure by which Sewell had a reasonable opportunity to appeal the adverse benefit determination, and further ensured that there was a full and fair review of Sewell's claim and the adverse benefit determination. Moreover, Lincoln clearly engaged in "meaningful dialogue" with Sewell's counsel, including sending Dr. Geimer's first report[19] to Sewell's counsel for review and comment[20] before the September 27, 2023, appeal uphold letter was issued,[21] and sent Dr. Swotinsky's first report[22] to Sewell's counsel for review and comment,[23] as well.

---

[16] Order Granting Defendant's Motion for Extension (D.E. 17 at Page 3).
[17] Dr. Swotinsky's first report dated June 3, 2024 was sent to Sewell's counsel on June 3, 2024. Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 818 and 829 (D.E. 21-5, Page 106 and 117).
[18] Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 742-755 (D.E. 21-5, Pages 30-43).
[19] Ex. 3, Administrative Record, Lincoln/Sewell 482-487 (D.E. 21-4, Pages 9-14)
[20] Ex. 3, Administrative Record, Lincoln/Sewell 480-481 (D.E. 21-4, Pages 7 and 8)
[21] Ex. 2, Administrative Record, Lincoln/Sewell 093-103 (D.E. 21-2, Pages 1-11)
[22] Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 799-804 and 820-825 (D.E. 21-5, Pages 87-92 and 108-113

Sewell also complains that Lincoln's initial January 27, 2023, denial letter[24] did not explain its decision to deny benefits that was based on concrete evidence. However, Dr. Millstein's report[25] and Lincoln[26] both pointed out that Sewell's .222% BAC raised a presumption that Sewell's intoxication contributed to the cause of the accident, in accordance with the unique provision in the Policy. Dr. Millstein also noted that a BAC at that level would result in lack of coordination, incoherent throughs, confusion, nausea, and vomiting and that studies support that alcohol consumption is an important risk factor in traumatic cervical spinal cord injuries such as diving incidents. Additionally, Dr. Millstein's report referenced five different studies that supported his report. Clearly, the Policy presumption was met, and the denial of the claim was well explained and based on concrete evidence based on the record at that point in time.

Accordingly, none of the issues Sewell complains are procedural irregularities by Lincoln are, in fact, procedural errors. Because there were no irregularities, there is no basis for reducing the deference the Court gives to Lincoln's decision on Sewell claim. However, even if they were procedural irregularities, the "failure to fulfill procedural requirements generally does not give rise to a substantive damage remedy.'" *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 540 (5th Cir. 2007). And even then, the normal remedy is to remand to the plan administrator. *Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 157 (5th Cir. 2009).

---

[23] Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 798 and 818-819 (D.E. 21-5, Pages 86 and 106-107)
[24] Ex. 3, Administrative Record, Lincoln/Sewell 638-640 (D.E. 21-4, Pages 165-167).
[25] Ex. 3, Administrative Record, Lincoln/Sewell 641-644 (D.E. 21-4, Pages 168-171).
[26] Ex. 3, Administrative Record, Lincoln/Sewell 639 (D.E. 21-4, Page 166)

**K.**     **Affidavit Regarding Negating Bias and Ensuring Claim Decision Accuracy Is Appropriate.**

Sewell misses the point of Lincoln's cited cases regarding previous Court's findings that facts similar to those included in Kayla Bick's Declaration support a finding that appropriate steps were taken that meant the Court should give minimal weight to the structural conflict of interest. These cases are not cited to show some sort of carryover to Lincoln as the successor entity to Liberty. The cases are cited to show that Ms. Bick's Declaration describes the same facts that were held in those cited cases to negate the conflict factor. Specifically, Lincoln took affirmative steps to reduce potential bias and promote accuracy, as described in Ms. Bick's Declaration.

**L.**     **Sewell Is Simply Wrong About Lincoln's Characterization of the Record.**

In complaining that Lincoln mischaracterized the record, Sewell stated Lincoln claims that "bystanders stated that Mr. Sewell showed signs of "severe intoxication." However, this is a gross mischaracterization, as that statement is not contained in the record. The only references to "bystanders" in the record pertain to "casting doubt on the opinion of lay bystanders"[27] (those who signed Affidavits) and to a bystander who was manually holding a finger in Sewell's mouth in an attempt to keep his airway open.[28]

**M.**     **Sewell Has Failed to Carry his Burden to Show that Lincoln's Denial of Sewell's Claim for AD&D Benefits Was an "Abuse of Discretion."**

It is abundantly clear that Lincoln not only did not abuse its discretion but correctly denied Sewell's claim for AD&D benefits from the Life Plan. Lincoln received Sewell's claim for AD&D benefits based on Sewell becoming a quadriplegic after diving into murky water of an unknown depth from the back of a boat. A thorough review of the claim was completed, and it was determined that the AD&D benefits were not payable as the administrative record

---

[27]  Ex. 3, Administrative Record, Lincoln/Sewell 140 (D.E. 21-3, Page 86).
[28]  Ex. 3, Administrative Record, Lincoln/Sewell 196 (D.E. 21-3, Page 142).

concerning Sewell's claim supported a finding that the Policy exclusion meant that Sewell was not eligible for benefits from his incident. Specially, the Policy exclusion operates to bar payment of Sewell's claim for accidental dismemberment benefits.

The Policy's exclusion that was applied reads, "No benefits are payable for any loss that is contributed to or caused by: . . . 11. the presence of alcohol in the Covered Person's blood which raises a presumption that the Covered Person was under the influence of alcohol and contributed to the cause of the accident. The blood alcohol level is governed by the jurisdiction of the state in which the accident occurred."[29] Testing of Sewell's blood soon after he arrived at the hospital showed a blood alcohol concentration ("BAC") of .222%, which was almost three times the legal limit in Texas (.08%). The presumption language in the Policy exclusion is significant. Moreover, the evidence in the administrative record lends further support for that presumption. As the reviewing physician, Dr. Robert Millstein, stated in his report, with a BAC of .222, Sewell would have experienced signs of severe intoxication with impairment in motor function with unsteadiness; incoordination; and impaired vision, cognitive function, and judgment, all of which contributed to the spinal cord injury that caused Sewell's quadriplegia.[30] Thus, with a BAC of .222%, Sewell's judgment when diving into the water would have been significantly and dangerously impaired.

The Policy also includes sufficient discretionary language[31] such that the Court's review of Lincoln's decision will be under the abuse of discretion standard. Lincoln did not abuse its discretion in deciding that the presence of alcohol in Sewell's blood when he dove off the back of the boat while so severely intoxicated meant Sewell's loss was excluded under the Policy

---

[29]   Ex. 1, Policy, Lincoln/Sewell 033 (D.E. 21-1, Page 33).
[30]   Ex. 3, Administrative Record, Lincoln/Sewell 641 (D.E. 21-4, Page 168).
[31]   Ex. 1, Policy, Lincoln/Sewell 038 (D.E. 21-1, Page 38).

provisions.  Accordingly, Lincoln did not abuse its discretion in finding that no AD&D benefits were payable.

**II.**
**CONCLUSION AND PRAYER**

It is clear that, based on the administrative record, Lincoln's decision to deny Sewell's claim for AD&D benefits from the Life Plan under the Policy was not an abuse of discretion and was the correct decision.  Substantial evidence in the administrative record establishes that Sewell's incident and resulting quadriplegia was contributed to or caused by the presence of alcohol in Sewell's blood, and Sewell failed to rebut the presumption created by the Policy exclusion or show that Lincoln abused its discretion in making the decision that no AD&D benefits were payable to Sewell under the Policy.  Therefore, Lincoln requests that the Court enter a take-nothing judgment on Sewell's claims in this action and award Lincoln its attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g).

Dated this 30th day of October. 2024.

Respectfully submitted,

By:   /s/ Iwana Rademaekers
Iwana Rademaekers, Attorney in Charge
State Bar of Texas No. 16452560
S.D. of Texas No. 22781
LAW OFFICES OF IWANA RADEMAEKERS, P.C.
17304 Preston Road, Suite 800
Dallas, Texas 75252
Main:  (214) 579-9319
Fax:  (469) 444-6456
Email:  iwana@rademaekerslaw.com

ATTORNEYS FOR DEFENDANT

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing pleading was electronically filed with the clerk for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court, and the electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means, as follows:

J. PRICE McNAMARA
Email: price@jpricemcnamara.com

October 30, 2024
Date

/s/ Iwana Rademaekers
Iwana Rademaekers