**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | |
|---|---|
| TIMOTHY SEWELL, )<br><br>Plaintiff, )<br><br>vs. )<br><br>THE LINCOLN NATIONAL LIFE )<br>INSURANCE COMPANY, )<br><br>Defendant. ) | Case No. 2:23-cv-00317 |

## DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S MEMORANDUM AND RECOMMENDATION ON PLAINTIFF'S AND DEFENDANT'S CROSS MOTIONS FOR SUMMARY JUDGMENT

Defendant The Lincoln National Life Insurance Company ("Lincoln") files its Objections to Magistrate Judge's Memorandum and Recommendation ("M&R") on Plaintiff's and Defendant's Cross Motions for Summary Judgment. The Objections are timely filed by Lincoln pursuant to the Memorandum and Recommendations entered on March 3, 2025 (D.E. 30) and served on March 4, 2025.

The Objections are supported by Lincoln's Motion for Summary Judgment and Brief in Support (D.E. 24, 24-2, and 24-3), Lincoln's Response to Plaintiff's Cross Motion for Summary Judgment (D.E. 27), Lincoln's Reply in Support of its Motion for Summary Judgment (D.E.28), and the administrative record, the Policy, and Lincoln's final appeal decision, which are all attached to Defendant's Amended Response to ERISA Case Order (D.E. 21-1, 21-2, 21-3, 21-4, and 21-5) filed by Lincoln on August 8, 2024. All of these documents are fully incorporated by reference into these Objections.

**A.**   <u>**LINCOLN OBJECTS TO THE M&R TO THE EXTENT THAT IT PLACED THE BURDEN ON LINCOLN TO PROVE THE POLICY EXCLUSION WAS PROPERLY APPLIED TO DENY SEWELL'S CLAIM.**</u>

While it is correct that in the state law context of insurance, the Fifth Circuit has held that the insurer must prove the exclusion prevents coverage,[1] the Fifth Circuit has not made such a finding with regard to claims governed by ERISA. The case cited in the Magistrate's M&R was from the Eleventh Circuit,[2] and the one Fifth Circuit case cited simply stated that the claimant has the "initial burden of demonstrating entitlement to benefits under an ERISA plan or that a denial of benefits under an ERISA plan is arbitrary and capricious.[3] However, in cases analyzing policy exclusions in ERISA cases, the Fifth Circuit has not found that the burden shifts. For example, *White v. Life Ins. Co. of N. Am.*, 892 F.3d 762 (5th Cir. 2018) involved a case pertaining to an intoxication exclusion. In discussing the burden of proof, the Fifth Circuit stated that the claimant "bears the burden to prove that substantial evidence does not support" the insurer's decision to deny the claim. Id., 892 F.3d at 770. The Court made no distinction regarding the burden of proof on the exclusion. See also, *George v. Reliance Std. Life Ins. Co.*, 776 F.3d 349 (5th Cir. 2015) (claimant bore burden to show administrator abused its discretion in decision to apply the mental/nervous condition exclusion to an ERISA claim for disability benefits). Likewise, in this case, Sewell bore the burden to show that substantial evidence did not support Lincoln's denial of his claim under the policy, including the policy exclusions.

---

[1]   *Martin Res. Mgmt. Corp. v. Fed. Ins. Co.*, No.20-40571, 2021 U.S. App. Lexis 28469 (5th Cir. Sept. 20, 2021) (copy attached).
[2]   *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998)
[3]   *Perdue v. Burger King Corp.*, 7 F. 3d 1251, 1254 n.9 (5th Cir. 1993)

**B.** **LINCOLN OBJECTS TO THE M&R'S FINDINGS THAT LINCOLN DID NOT ENGAGE IN A FAIR, IMPARTIAL, OR THOROUGH REVIEW OF THE RECORD; RELIED SOLELY UPON THE BLOOD ALCOHOL LEVEL OF .222 CONTAINED IN THE MEDICAL RECORDS; AND DID NOT SUPPORT ITS DECISION WITH SUBSTANTIAL EVIDENCE.**

**LINCOLN FURTHER OBJECTS TO THE M&R'S FINDING THAT DR. MILLSTEIN'S, DR. GEIMER'S, AND DR. SWOTINSKY'S REPORTS AND OTHER EVIDENCE RELIED UPON BY LINCOLN WERE NOT SUBSTANTIAL EVIDENCE TO SUPPORT THE DENIAL OF SEWELL'S CLAIM.**

**LINCOLN FURTHER OBJECTS TO THE M&R'S FINDINGS THAT THE AFFIDAVITS CONSTITUTED SUBSTANTIAL EVIDENCE TO SUPPORT SEWELL'S CLAIM AND THAT LINCOLN REJECTED THE AFFIDAVITS WITHOUT REASON OR WITH WRONG CONCLUSIONS.**

**LINCOLN FURTHER OBJECTS TO THE M&R IGNORING THE VERY HIGH BLOOD ALCOHOL LEVEL AND EFFECTS THEREOF, AS WELL AS THE OTHER EVIDENCE IN THE ADMINISTRATIVE RECORD THAT SUPPORTS LINCOLN'S DECISION.**

The statement in the M&R that Lincoln did not engage in a fair, impartial, or thorough review of the record is incorrect, as the record, particularly Lincoln's letters to Sewell and his counsel regarding its claim decisions,[4] reflects that Lincoln reviewed and referenced the full administrative record, including but not limited to Sewell's medical records, the nature and circumstances of the accident, Dr. Arnold's reports, medical literature, and the affidavits. Additionally, Lincoln obtained four well-credentialed physician peer reviews that provided careful analyses of the documents that had been received, as well as the specific reasons that certain of Dr. Arnold's opinions were incorrect.[5] Lincoln's correspondence demonstrated that all of the evidence was considered and explained the reasons that certain evidence supporting the claim was not substantial evidence to support Sewell's claim for benefits. Lincoln's final

---

[4] Ex. 2, Administrative Record, Lincoln/Sewell 093-103 (D.E. 21-2, Pages 1-11), Ex. 3, Administrative Record, Lincoln/Sewell 488-490 (D.E. 21-4, Pages 15-17), Lincoln/Sewell 638-640 (D.E. 21-4, Pages 165-167), and Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 742-755 (D.E. 21-5, Pages 30-43).

[5] Ex. 3, Administrative Record, Lincoln/Sewell 137-144 (D.E. 21-3, Pages 83-90), Lincoln/Sewell 497-502 (D.E. 21-4, Pages 24-29), Lincoln/Sewell 641-644 (D.E. 21-4, Pages 168-171), and Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 826-831 (D.E. 21-5, Pages 114-119.

August 2, 2024, letter was 15 pages long, and it delineated and discussed the administrative record in full. For example, with regard to the affidavits, Lincoln's letter noted that the affidavits were redundant, suggesting that one person was their primary author. It also noted that the affidavits were inconsistent with the very high blood alcohol level. Furthermore, it found the medical records containing the .222 g/dL BAC and the ER physician's note that Sewell had presented with "alcohol intoxication" were more reliable because the medical records were contemporaneous, came from independent sources not subject to biased recall, and came from medical professionals who were better qualified than Sewell's friends at recognizing his level of intoxication. Lincoln also considered the evidence regarding the effects of the specific blood alcohol level. Lincoln not only engaged in a fair, impartial, and thorough review of the record, but it also correctly found that Sewell was not eligible for benefits under the policy based on the administrative record.

C. **LINCOLN OBJECTS TO THE FINDING IN THE M&R THAT LINCOLN DID NOT CONSIDER OR FOLLOW A PLAIN READING OF THE POLICY EXCLUSION.**

It is not clear from the M&R how the Magistrate Judge construed the relevant policy exclusions and the effect of the presumption or how Lincoln did not follow the plain language of the exclusion, but the language in the exclusion is unique. "[T]he presence of alcohol in the Covered Person's blood, . . . raises a presumption that the Covered Person was under the influence of alcohol and contributed to the accident. The blood alcohol level is governed by the jurisdiction of the state in which the accident occurred."[6] The M&R states that Lincoln ended its analysis with the presumption and that Sewell rebutted the presumption with the affidavits. However, this is not correct. Lincoln considered the affidavits and the physicians' reports, as well as the other evidence in the administrative record, including the very high BAC level, and

---

[6]  Ex. 1, Policy, Lincoln/Sewell 033 (D.E. 21-1, Page 33).

correctly found that the presumption was not rebutted and that Sewell's benefit claim should be denied.

**D.** **LINCOLN OBJECTS TO THE FINDINGS IN THE M&R THAT AFTER SEWELL SUBMITTED HIS APPEAL, "THE CLAIMS PROCESS BECAME ADVERSARIAL" AND THAT LINCOLN'S CONFLICT OF INTEREST IS APPARENT FROM THE ADMINISTRATIVE RECORD."**

As Lincoln acknowledged in its initial briefing with the Court, Lincoln operates under a structural conflict in that it is both the insurer and the claims administrator of the policy. Lincoln also filed a declaration[1] with the Court that detailed the affirmative steps taken by Lincoln to reduce potential bias and promote accuracy such that conflict as a factor to consider is less important, even to the vanishing point. However, the M&R states that the administrative record itself reflects conflict and erroneously states that there was a "summary refusal" by Lincoln of Sewell's evidence and that the independent peer reviews Lincoln obtained during the appeal process "do not read like the impartial expert reports expected of an impartial fiduciary." However, the administrative record does not support either of those findings. As stated above, Lincoln did not refuse to consider any documentation submitted by Sewell or his counsel. Moreover, the expert reports reflect a debate between Dr. Arnold on the one hand and Dr. Geimer and Dr. Swotinsky on the other, with all of the physicians on both sides presenting their own viewpoints and also responding to the viewpoints expressed by other physicians. Dr. Swotinsky, in particular, backed up his statements and opinions with specific citations to both the medical records he reviewed and medical literature. The administrative record does not indicate that either Dr. Geimer's or Dr. Swotinsky's reports or the process itself was adversarial.

**E.** **LINCOLN OBJECTS TO THE FINDINGS IN THE M&R THAT SEWELL'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED AND THAT LINCOLN'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED.**

As described above, the M&R fails to focus on the evidence that supported Lincoln's decision, as required by *Ellis v. Liberty Life Assur. Co*. of Boston, 394 F.3d 262, 273 (5th Cir. 2004), choosing to solely rely on the affidavits of Sewell's friends and family to find that Lincoln abused its discretion in denying Sewell's claim for benefits. The very high BAC of .222 and the expected effects were ignored. This level of intoxication was such that it impaired Sewell's judgment to a very large degree, as reflected in the administrative record. Accordingly, it would have been reasonable for Lincoln to draw the inference that Sewell's intoxication resulted in his decision to dive (not jump) into murky water of an unknown depth. As the Fifth Circuit has stated, even if there is no direct proof that alcohol consumption caused or contributed to Sewell's incident, that does not mean the administrator erred in denying benefits because there rarely is such direct proof. The evidence will always be circumstantial, and courts should consider the nature of the incident in making that determination. *Dutka v. AIG Life Ins. Co*., 573 F.3d at 210, 214 5th Cir. 2009). For these reasons, as well as the arguments contained in Lincoln's briefs to the Court, Lincoln's Motion for Summary Judgment should be granted by the Court.

## CONCLUSION AND PRAYER

It is clear that, based on the administrative record, Lincoln's decision to deny Sewell's claim for AD&D benefits from the Life Plan under the Policy was not an abuse of discretion and was actually the correct decision. Substantial evidence in the administrative record establishes that Sewell's incident and resulting quadriplegia was contributed to or caused by the presence of alcohol in Sewell's blood, and Sewell failed to effectively rebut the presumption created by the

Policy exclusion or show that Lincoln abused its discretion in making the decision that no AD&D benefits were payable to Sewell under the Policy. Therefore, Lincoln requests that the Court enter these Objections to the M&R, grant Lincoln's Motion for Summary Judgment, enter a take-nothing judgment on Sewell's claims in this action, and award Lincoln its attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g).

Dated this 17th day of March 2025.

Respectfully submitted,

By: /s/ Iwana Rademaekers
Iwana Rademaekers, Attorney in Charge
State Bar of Texas No. 16452560
S.D. of Texas No. 22781
LAW OFFICES OF IWANA RADEMAEKERS, P.C.
17304 Preston Road, Suite 800
Dallas, Texas 75252
Main: (214) 579-9319
Fax: (469) 444-6456
Email: iwana@rademaekerslaw.com
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing pleading was electronically filed with the clerk for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court, and the electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means, as follows:

J. PRICE McNAMARA
Email: price@jpricemcnamara.com

March 17, 2025                      /s/ Iwana Rademaekers
Date                                Iwana Rademaekers