# Martin Res. Mgmt. Corp. v. Fed. Ins. Co.

United States Court of Appeals for the Fifth Circuit

September 20, 2021, Filed

No. 20-40571

**Reporter**

2021 U.S. App. LEXIS 28469 *; __ Fed. Appx. __; 2021 WL 4269565

MARTIN RESOURCE MANAGEMENT CORPORATION, Plaintiff—Appellant, versus FEDERAL INSURANCE COMPANY, Defendant—Appellee.

**Notice:** PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**Prior History:** [*1] Appeal from the United States District Court for the Eastern District of Texas. USDC 6:20-CV-83.

Martin Res. Mgmt. Corp. v. Fed. Ins. Corp., 2020 U.S. Dist. LEXIS 140858, 2020 WL 4550395 (E.D. Tex., Aug. 6, 2020)

**Counsel:** For Martin Resource Management Corporation, Plaintiff - Appellant: Russell S. Post, David Watkin Jones, Esq., Joshua S. Smith, Beck Redden, L.L.P., Houston, TX.

For Federal Insurance Company, Defendant - Appellee: Tony Loren Draper, Walker Wilcox Matousek, L.L.P., Houston, TX; Paul Francis Matousek, Walker, Wilcox, Matousek, L.L.P., Chicago, IL.

**Judges:** Before JONES, SOUTHWICK, and ENGELHARDT, Circuit Judges.

# Opinion

PER CURIAM:[*]

This appeal arises out of an insurance coverage dispute. An insured sought coverage for its contractually assumed obligations to defend and indemnify the trustee of its employee stock ownership plan liabilities in an underlying litigation. The insured tendered the demand from the trustee to its insurance carrier and filed suit after coverage was denied. After finding the insured did not meet its burden of establishing coverage under the terms of the policy, the district court dismissed with prejudice. We AFFIRM.

I.

Plaintiff-Appellant Martin Resource Management Corporation ("Martin") allows its employees to share in ownership of the company via an employee stock ownership plan ("ESOP"). [*2] An ESOP is a type of retirement plan "that invests primarily in the stock of the company that employs the plan participants." *Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 412, 134 S. Ct. 2459, 189 L. Ed. 2d 457 (2014)*. Martin is the plan sponsor and the plan administrator, and appointed a third-party professional trustee, Wilmington Trust, N.A., ("Wilmington") to manage the ESOP's investments and transactions.

In an effort to manage risk, Martin purchased a claims-made Executive Protection Portfolio Policy (the "Policy") from Defendant-Appellee Federal

---

[*] Pursuant to **5TH CIRCUIT RULE 47.5**, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in **5TH CIRCUIT RULE 47.5.4**.

Insurance Company ("Federal"), with a policy period from April 1, 2017 to April 1, 2018. The key portions of the Policy are the Fiduciary Liability Coverage Section and the Fiduciary Liability Coverage Enhancements Endorsement. The relevant terms fall into three categories: coverage, definitions, and exclusions. Insuring Clause 1 is the relevant coverage section and provides coverage with respect to claims that Martin has committed a "Wrongful Act" as defined in the Policy. The Policy has a specific definition for a "Loss," which incorporates a "Wrongful Act," and creates four categories of "Wrongful Acts." Although Exclusion 4(e) of the Policy excludes coverage for most liabilities assumed by way of contract, an exception [*3] exists with respect to certain contractual liabilities.

In early 2017, Martin employees filed two underlying class actions against Wilmington, alleging "that Martin had improperly loaned or contributed money to the ESOP, which then turned around and—at Martin's behest—used the borrowed funds to buy stock from Martin and its insiders at an inflated price." Wilmington was the only named defendant. Wilmington notified Martin twice of the two underlying lawsuits and demanded that Martin provide defense and indemnification pursuant to the Trust Agreement (the "Demands"). The Demands do not allege any conduct by Martin, wrongful or otherwise. A class settlement was approved on October 1, 2020, one month after the instant appeal was filed. In accordance with the Trust Agreement, Martin paid to defend Wilmington in the underlying litigation.

Martin next tendered the Demands from Wilmington to its insurance carrier, Federal, seeking coverage under the Fiduciary Liability Coverage Section of the Policy. The relevant clause covers a fiduciary claim made against Martin for a "Wrongful Act" committed or allegedly committed by Martin. This action arises from Federal's denial of insurance coverage [*4] for claims asserted against Martin.

Initially, Federal agreed to pay Wilmington's defense costs, but subsequently determined that the Demands were not covered under the Policy. Federal notified Martin by letter on February 21, 2018, that it was declining coverage for the Demands and would no longer pay the defense costs. Two years later, on February 18, 2020, Martin filed its complaint against Federal asserting five causes of action: (1) breach of contract; (2) declaratory judgment; (3) violations of the Texas Insurance Code for unfair settlement practices; (4) breach of duty of good faith and fair dealing; and (5) violations of the Texas Insurance Code for processing and settlement of claims. Federal responded to the complaint with a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. Martin later amended its complaint, adding two paragraphs, which include references to the petitions in the underlying lawsuits that mention Martin. Federal responded with a second Rule 12(b)(6) motion to dismiss.

On August 6, 2020, after full briefing, the district court granted Federal's motion to dismiss and entered an order dismissing Martin's claims with prejudice. Martin timely appealed.

II.

We review the district court's grant of a motion to [*5] dismiss de novo. *See Budhathoki v. Nielsen, 898 F.3d 504, 507 (5th Cir. 2018). Rule 8(a)(2) of the Federal Rules of Civil Procedure* requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. Although a complaint need not contain detailed factual allegations, '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to an assumption of truth. *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009)*.

"Interpretation of an insurance contract generally involves a question of law." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007). In the context of a lawsuit seeking coverage under an insurance policy, dismissal is proper when the plain language of the policy precludes coverage. *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 348 (5th Cir. 2020) (Rule 12(b)(6) dismissal is proper where claims for which coverage is sought are not covered by the policy).

III.

The core issue before this court is whether Wilmington's claim for defense and indemnity from Martin is a Fiduciary Claim for a Wrongful Act by Martin as defined in the Policy. For the reasons addressed below, we find that it is not.

*Stating a valid claim for coverage under the Policy*

Our jurisdiction in this case is based on diversity. Therefore, Texas state law governs the substantive issues. [*6] *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012). Both parties agree that this dispute is governed by the Policy's Insuring Clause. As the insured seeking coverage, Martin has the "burden of establishing coverage under the terms of the policy." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010); *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998). If the insured proves coverage, then to avoid liability the insurer must prove the loss is within an exclusion. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 782 (Tex. 2008). If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage. *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 193 (Tex. App. - Houston [14th Dist.] 2003, pet. denied).

*Interpreting the Policy*

Under Texas law, the interpretation of insurance policies is governed by the same rules that apply to the interpretation of other contracts. *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 858 (5th Cir. 2014); *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 892-93 (Tex. 2017). "[T]he proper interpretation of an insurance policy is a question of law," in the sole province of the court. *Cooper Indus., Ltd. v. Nat'l Union Fire Ins. Co.*, 876 F.3d 119, 128 (5th Cir. 2017). A court must interpret an insurance policy by giving "words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017).

The primary goal of construction is to give effect to the parties' intent as reflected in the terms of the Policy. *Blanton v. Cont'l Ins. Co.*, 565 F. App'x 330 (5th Cir. 2014). "Insurance policies are strictly construed in favor of coverage." *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 492 (5th Cir. 2000). The Policy must be read as a whole, and effect must [*7] be given to all parts, if possible. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010). Unambiguous language must be enforced as it is written, while ambiguous language must be resolved in favor of the insured, if it is reasonable to do so. *Don's Bldg. Supply v. OneBeacon Ins.*, 267 S.W.3d 20, 23 (Tex. 2008). Language is ambiguous only if it is susceptible to more than one reasonable interpretation. *Id.* Language is not ambiguous merely because the parties interpret it differently. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006).

Where the policy language lends itself to a clear and definite meaning, the Policy is not ambiguous, and ambiguity does not exist simply because a party offers a conflicting interpretation. *Great Am.*, 512 S.W.3d at 893. Similarly, the fact that parties "disagree about the policy's meaning does not

create ambiguity." *Page, 315 S.W.3d at 527*. When the petition does not present facts within the scope of the policy's coverage, the insurer is not legally obligated to defend a suit on behalf of the insured. *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009).

*Breach of Contract*

It is well recognized that "[i]nsurance policies are contracts." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018). Under Texas law, the elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.--Houston [14th Dist.] 2005, pet. denied)). [*8] While a complaint need not contain detailed factual allegations as to each element of a plaintiff's claim, it must contain enough factual support "to raise a reasonable expectation that discovery will reveal evidence of each element" of the plaintiff's cause of action. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 256 (5th Cir. 2009).

Federal contends that Martin fails to allege that it had a duty to provide coverage to Martin under the Policy, and thus fails to allege that Federal breached its obligations under the Policy by refusing Martin coverage under the Policy.

The Policy provides the following under the Fiduciary Liability Coverage Insuring Clause 1:

> The Company shall pay, on behalf of the Insureds, Loss on account of any Fiduciary Claim first made against the Insureds:
>> (i) during the Policy Period . . . for a Wrongful Act committed, attempted or allegedly committed or attempted before or during the Policy Period by such Insureds .

. .

A "Wrongful Act" is specifically defined under the Policy to include only four possible categories of conduct:

> a) breach of the responsibilities, obligations or duties imposed by ERISA upon fiduciaries of the Sponsored Plan committed, attempted or allegedly committed or attempted by an Insured while acting in the [*9] Insured's capacity as a fiduciary;
> b) negligent act, error or omission in the Administration of any Plan committed, attempted or allegedly committed or attempted by an Insured;
> c) matter, other than as set forth in (a) or (b) above, claimed against an Insured solely by reason of the Insured's service as a fiduciary of any Sponsored Plan; or
> d) act, error or omission committed, attempted or allegedly committed or attempted by an Insured, solely in such Insured's settlor capacity with respect to establishing, amending, terminating or funding a Sponsored Plan.

Under the Policy, Fiduciary Claim is defined as: "any . . . written demand for . . . monetary or non-monetary (including injunctive) relief . . . against an Insured for a Wrongful Act."

A careful, plain reading of the Insurance Clause shows coverage is only available if a Fiduciary Claim is made against an Insured for a Wrongful Act by an Insured. The Demands, as they appear from Wilmington, are facially insufficient to trigger the Insuring Clause, which requires the assertion of a "Fiduciary Claim . . . made against [Martin] . . . for a Wrongful Act committed . . . by [Martin.]"

In Federal's February 21, 2018 coverage letter to Martin, Federal stated [*10] that Martin had not been named as a defendant in those actions and that there were no allegations of wrongful conduct against Martin in the complaints. In its Order, the district court reasoned that Martin had not claimed

that it was only obligated to defend and indemnify Wilmington if plaintiffs allege that Martin acted wrongfully.

Martin argues the Policy broadly covers "any" claim "for" a Wrongful Act by Martin—sweeping language that, by definition, captures all claims "concerning," "pertaining to," "as a result of," or "because of" a Wrongful Act. In support of its expansive interpretation of "for," Martin relies on *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir. 2020) (en banc). In *Latiolais*, this court addressed whether a removal under 28 U.S.C. § 1442(a), which authorizes removal "for or relating to any act under color of such office," was proper. *Id.* at 291. This court's distinction in *Latiolais* between the breadth of the phrases "for any act" and "for or relating to any act" does not support Martin's broad interpretation of "for." *Id.* Analyzing the canon against surplusage, this court noted that by keeping "for," Congress left no doubt that cases previously removable under the Federal Officer Removal Statute remained removable even as Congress broadened [*11] the universe of acts that could sustain removability. *Id.* at 294 (citing *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 226, 128 S. Ct. 831, 840, 169 L. Ed. 2d 680 (2008)). "For" requires a direct causal nexus while "relating to" was added to the removal statute to make it more expansive. Martin's reading of "for" a wrongful act is overly-broad and contrary to the plain language of the Policy and this court's analysis in *Latiolais*.

Martin also argues that "[a]lthough the policy excludes coverage for most liabilities assumed by way of contract, an exception exists with respect to contractual liabilities that Martin assumed pursuant to the trust agreement." Exclusion 4(e) of the policy reads:

> "The Company shall not be liable for Loss on account of any Claim against an Insured . . . based upon, arising from or in consequence of the liability of others assumed by any Insured under any written or oral contract or agreement; provided that this Exclusion . . .

shall not apply to the extent that . . . the liability was assumed in accordance with or under the agreement or declaration of trust pursuant to which the Plan was established . . ."

In *Mary Kay Holding Corp. v. Federal Holding Co.*, No. 3:06-CV-0896-N, 2007 U.S. Dist. LEXIS 88583, 2007 WL 4179313 (N.D. Tex. 2007), the insured Mary Kay made a similar argument, urging a district court consider an exclusion and its exception. Mary Kay argued that an exception to an exclusion [*12] barring coverage for COBRA claims supported its contention that the insuring clause had been satisfied. 2007 U.S. Dist. LEXIS 88583, [WL] at *7-8. The district court held that Mary Kay first had to establish that a claim against it was covered under the insuring clause of the policy before exclusions or exceptions come into play, and that regardless of the language of an exclusion or exception, "there is no coverage for [a claim] that is not also a wrongful act under the Policy." 2007 U.S. Dist. LEXIS 88583, [WL] at *8. On Mary Kay's appeal, this court affirmed and stated: "As the District Court found, . . . exceptions to exclusions do not, in themselves, yield insurance coverage." *Mary Kay Hldg. Corp. v. Fed. Ins. Co.*, 309 F. App'x 843, 850 n.5 (5th Cir. 2009).

Martin is first required to establish that a Fiduciary Claim against it is covered under the Insuring Clause. But by attempting to invoke an exception to an exclusion, when Martin has not established coverage under the Policy, Martin seeks to bypass the step of meeting its burden to establish coverage. *See Gilbert Tex. Constr.*, 327 S.W.3d at 124. Martin has failed to satisfy its burden under Texas law to establish a right to coverage for the demands under the Policy. Accordingly, we affirm dismissal of the breach of contract claim.

*Violations of the Texas Insurance Code*

Martin brings two claims for violations of the Texas [*13] Insurance Code: unfair claim

settlement practices in violation of Chapter 541 and failing to comply with deadlines for processing and settlement of claims imposed by Chapter 542. To state claims for misrepresentation or fraud in violation of the Texas Insurance Code, Plaintiffs must meet the "who, what, when, where, and how" requirements of Federal Rule of Civil Procedure 9(b). *Aviles v. Allstate Fire & Cas., Ins. Co.*, No. 5:19-CV-00023, 2019 U.S. Dist. LEXIS 123931, 2019 WL 3253077, at *2 (S.D. Tex. 2019). Martin's allegations of Texas Insurance Code violations are conclusory and devoid of specific supporting factual allegations.

In its complaint, Martin merely recites the provisions of Texas Insurance Code § 542.055 and refers to § 541, failing to state an actual claim. *See Jacinto Med. Ctr., LP v. Nationwide Mut. Ins. Co.*, No. CV H-10-3660, 2011 U.S. Dist. LEXIS 174224, 2011 WL 13249834, at *3 (S.D. Tex. 2011)* (Plaintiff's allegations "are merely restatements of the Texas Insurance Code provisions. The facts alleged elsewhere in the complaint add no flesh to these statutory bones."); *Mt. Hebron Missionary Baptist Church v. Scottsdale Ins. Co.*, No. 4:17-CV-3164, 2018 U.S. Dist. LEXIS 232936, 2018 WL 8755785, at *5 (S.D. Tex. 2018) (assertions that "merely parrot the language of the applicable sections of the Code" and do not attribute conduct to a particular defendant are "legal conclusion[s] couched as factual allegation[s]"); *SHS Inv. v. Nationwide Mut. Ins. Co.*, 798 F. Supp. 2d 811, 821 (S.D. Tex. 2011) (Dismissing Insurance Code claims that were "largely composed of legal conclusions couched as factual allegations, formulaic recitations of the elements of a cause of action, generic paraphrases of statutory language, and conclusory statements [*14] without supporting facts.").

In addition to failing to satisfy Rule 9(b), Martin fails to state a claim for extra-contractual damages as recognized by the Texas Supreme Court in *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018). *Menchaca* clarifies the circumstances under which an insured can recover damages for violations of the Texas Insurance Code. The general rule is that an insured cannot recover policy benefits as actual damages for an insurer's statutory violation if the insured has no right to those benefits under the policy. *Id.* at 495. Because Martin is not entitled to policy benefits, it fails to plausibly allege a claim for violations of the Texas Insurance Code. *Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.*, No. 3:20-CV-1348-D, 2021 U.S. Dist. LEXIS 24032, 2021 WL 462105, at *2 (N.D. Tex. Feb. 9, 2021). Accordingly, the claims for violations of the Texas Insurance Code are dismissed.

*Breach of the Duty of Good Faith and Fair Dealing*

A claim for breach of the implied covenant of good faith and fair dealing cannot exist absent a breach of contract. *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995) ("As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered."). This rule "is in accord with the policy in which the duty of good faith is rooted. The covenant of good faith and fair dealing is implied in law to assure that a contracting party 'refrain[s] from doing anything [*15] to injure the right of the other to receive the benefits of the agreement.'" *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 930 F. Supp. 2d 653, 668-69 (W.D. Tex. 2013). Thus, where a plaintiff, like Martin, has no right to receive benefits under a contract, there can be no breach of the implied covenant of good faith. *Id.*

Further, a claim for bad faith under the Texas Insurance Code requires proof of something more than a bona fide coverage dispute. *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 526 (5th Cir. 2015) (affirming district court's grant of judgment as a matter of law to insurer on plaintiff's § 541 claims because "[e]vidence establishing only a bona fide coverage dispute does not demonstrate bad faith").

"The standard for common law breach of the duty of good faith and fair dealing is the same as that for statutory [claims under the Texas Insurance Code]." *Jaramillo v. Liberty Mut. Ins. Co.*, 2019 U.S. Dist. LEXIS 229060, 2019 WL 8223608, at *8 n. 9 (N.D. Tex. Apr. 29, 2019) (citing *Progressive Cty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005)). Because Martin has failed to plausibly allege a violation of the Texas Insurance Code and has not demonstrated its right to receive benefits under the Policy, we affirm the finding that Martin has failed to plausibly plead a claim for breach of the duty of good faith and fair dealing.

*Declaratory Judgment*

Finally, Martin seeks declaration "that the amounts paid to defend Wilmington in connection with the underlying class actions are covered under the Policy. The declaratory [*16] judgment that Martin seeks overlaps with the allegations underlying its breach of contract claim and will be resolved in the context of its breach of contract action. *See Xtria LLC v. Tracking Sys., Inc.*, 2007 U.S. Dist. LEXIS 44964, 2007 WL 1791252, at *3 (N.D. Tex. 2007); *Kougl v. Xspedius Mgmt. Co. of Dall./Fort Worth, L.L.C.*, 2005 U.S. Dist. LEXIS 10557, 2005 WL 1421446, at *4 (N.D. Tex. 2005) (dismissing claims for declaratory relief when they would be resolved in context of breach of contract actions). Accordingly, Martin's claim for declaratory judgment is dismissed.

IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

**End of Document**